

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-3-2003

# Araya v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-3296

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Araya v. Atty Gen USA" (2003). *2003 Decisions.* Paper 149.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/149

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 02-3296
_____

TESFU ARAYA,

Petitioner

v.

JOHN ASHCROFT, U.S. ATTORNEY GENERAL; KENNETH J. ELWOOD,
DISTRICT DIRECTOR U.S. IMMIGRATION AND NATURALIZATION SERVICE,

Respondents.
_____

On Petition for Review of an Order of
the Board of Immigration Appeals
INS No. A78-830-839

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 23, 2003

Before: ALITO, FUENTES, BECKER, Circuit Judges.

(Opinion Filed: November 3, 2003)
_____

OPINION OF THE COURT
_____

FUENTES, Circuit Judge:

In May 2001, Petitioner Tesfu Araya arrived in the United States at Newark International Airport. Araya requested asylum, and the asylum officer assigned to his case found that Araya had a credible fear of persecution. Accordingly, Petitioner submitted an application for asylum and withholding of removal, both of which were granted by an immigration judge ("IJ") in November 2001. Respondent INS appealed, and the Board of Immigration Appeals ("BIA") sustained the appeal in July 2002, ordering Araya removed from the United States to Ethiopia. Araya argues that the BIA's decision that he did not demonstrate a well-founded fear of persecution is not supported by substantial evidence. Because we do not find that a reasonable fact-finder would be compelled to disagree with the BIA, we affirm the BIA's decision.

Araya is of Eritrean ancestry, but was born in Ethiopia and has never lived in Eritrea. Starting in 1992, Araya was studying in India on an Ethiopian passport, but the passport was cancelled in 1998 by the Ethiopian government because he is of Eritrean descent. At that time, he was also told that he would not be allowed to return to Ethiopia because he was no longer considered an Ethiopian citizen, but an Eritrean. Araya's application for an Eritrean passport was also denied, although it is not clear why. In 2000, Araya traveled to Kenya with his cancelled passport and a forged renewal stamp, and stayed with his uncle for some time. The Kenyan uncle informed Araya that his mother's house in Ethiopia had been confiscated. After numerous failed attempts at gaining asylum in Kenya, he made his way to the United

Kingdom on a fake Swiss passport, and then finally to the United States, where his mother and two siblings reside. The siblings are U.S. citizens, while the mother is trying to gain asylum here, also on the grounds that those of Eritrean descent face persecution in Ethiopia.

Before the IJ, Araya testified that he had a brother, Abraham, who had lived in Ethiopia, but who had been detained, tortured and then deported because of his Eritrean ancestry. Abraham reached Kenya, but has since disappeared, so Araya has not been able to contact him directly; indeed, he only learned of Abraham's plight through another brother who lived in the U.S. Araya concluded by testifying that he fears returning to Ethiopia because of what happened to his brother Abraham and to his mother's house, and because of reports he has read about the mistreatment of ethnic Eritreans in Ethiopia. The IJ found Araya's fear of persecution credible and well-founded and granted him asylum. The BIA reversed, discounting Araya's testimony because the acts of persecution to which he testified came not from his personal knowledge, but from dated second-hand accounts. Furthermore, the BIA relied on the U.S. State Department's assertion in its 2000 Country Reports that a December 2000 peace accord between Eritrea and Ethiopia had resulted in steadily improving treatment of Eritreans in Ethiopia, including a near-cessation in deportations of Eritreans.

The parties agree that this Court reviews the BIA's findings of fact to determine whether they are supported by substantial evidence. E.g., Immigration and Naturalization Serv. v. Elias-Zacarias, 502 U.S. 478, 481 (1992). Specifically, the "BIA's determination

that [Araya] was not eligible for asylum... can be reversed only if the evidence presented by [Araya] was such that a reasonable factfinder *would have to conclude* that the requisite fear of persecution existed." Id. (emphasis added). This standard has been codified in statutory law: "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B) ; accord, e.g., Lukwago v. Ashcroft, 329 F.3d 157, 167 (3rd Cir. 2003). Thus, this Court's role is not to second-guess the BIA, or to weigh the evidence, but to overturn the BIA only if the facts compel us to conclude to the contrary.

Because the BIA could reasonably rely on the 2000 Country Reports to adjudge that Araya's fear of persecution was no longer well-founded, Araya has not met this heightened standard. Araya argues that other reports from groups such as Amnesty International refute the Country Reports' optimistic assessment of the Eritreans' situation. The BIA, though, was not compelled to credit these other reports over the Country Reports. Araya also contends that the Country Reports themselves are inconsistent because they referred to continuing detention and internment of Eritreans in Ethiopia. As Respondent points out, however, the Country Reports as a whole could be read as depicting the deportations and internments as past events that have been largely ameliorated by the 2000 peace accord. Additionally, the BIA's decision is not necessarily undercut by Araya's testimony as to his family history: the BIA could reasonably accept the more current Country Reports account over the dated second-hand account of persecution given by Araya. In short, although Araya has presented

some evidence of persecution, the record as a whole does not *compel* the conclusion that the

BIA erred.  Accordingly, we deny the petition for review.


TO THE CLERK OF THE COURT:
Kindly file the foregoing Opinion.


                                        /s/ Julio M. Fuentes
                                           Circuit Judge