In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-3419

THOMAS MENGISTU,

*Petitioner,*

v.

JOHN ASHCROFT, Attorney General
of the United States,

*Respondent.*

Petition to Review an Order of the
Board of Immigration Appeals.

ARGUED SEPTEMBER 11, 2003—DECIDED JANUARY 22, 2004

Before FLAUM, *Chief Judge,* and POSNER and EASTERBROOK, *Circuit Judges.*

POSNER, *Circuit Judge.* Thomas Mengistu was born in 1968 in Addis Ababa, the capital of Ethiopia. Ethnically, however, he is Eritrean. He came to the United States from Ethiopia in 1989 on a student visa, which expired in 1991. He did not leave the country, and in 1992 the immigration service began deportation proceedings against him. He did not deny that he was deportable, but he applied for asylum on the ground that he had been persecuted by the Ethiopian government for engaging in religious activity and resisting the draft and would be persecuted again if he were sent back to Ethiopia. Several of his sib-

lings had been granted asylum in the United States. The immigration judge denied Mengistu's application on the ground that the persecution of which he had complained had occurred under the communist regime of Mengistu Mariam (obviously not a relative), which had been overthrown in 1991. Nor had the persecution of which he complained been so atrocious that it would justify asylum even if it were certain not to be repeated, as in the case of German Jews who sought asylum in this country even after the overthrow of the Nazi regime. 8 C.F.R. § 208.13(b)(1)(iii)(A); *Asani v. INS*, 154 F.3d 719, 722 (7th Cir. 1998); *Bucur v. INS*, 109 F.3d 399, 404-05 (7th Cir. 1997); *Krastev v. INS*, 292 F.3d 1268, 1279-80 (10th Cir. 2002).

The judge ordered Mengistu deported (though granted him the option of voluntary departure). Mengistu appealed to the Board of Immigration Appeals. That was in 1993. Not until 2000 did the board decide the appeal, affirming the order of deportation. A month later Mengistu filed a motion to reopen his case on the basis of changed conditions in Ethiopia, as shown in documents that he attached to the motion. More than two years later the board denied the motion in the order that Mengistu asks us to vacate.

The board's long delay in deciding Mengistu's appeal was, ironically, the springboard for his motion to reopen. For in 1998, while his appeal was languishing before the board, Ethiopia and Eritrea went to war with each other. As a not very surprising consequence (for remember the removal of Japanese-American citizens from their homes on the west coast of the United States to concentration camps during World War II), Ethiopia began to persecute persons of Eritrean nationality or ethnicity living in Ethiopia. "Ethiopia authorities set in motion

a campaign to round up, strip of all proof of Ethiopian citizenship, and deport Ethiopians of Eritrean origin from the country." Human Rights Watch, *The Horn of Africa War: Mass Expulsions and the Nationality Issue (June 1998— April 2002)*, p. 3 (Jan. 2003). Tens of thousands of Eritreans and Ethiopians of Eritrean origin were deported in the course of the war. *Id.*; U.S. Dept. of State, Bureau of Democracy, Human Rights & Labor, *Ethiopia: Country Reports on Human Rights Practices—2001* (Mar. 4, 2002), http://www.state.gov/g/drl/rls/hrrpt/2001/af/8372pf.htm.

The war ended in December of 2000, several months after Mengistu had filed his motion to reopen but before the immigration service had responded to the motion. Its response, filed in April of 2001, was brief, consisting of a statement that since the war had ended, the changed country conditions on which Mengistu had premised his motion to reopen were no longer operative. Attached to the response were newspaper articles confirming that the war had indeed ended and that pursuant to the agreement ending the war Ethiopia had in February of 2001 begun withdrawing its troops from the portion of Eritrea that it had conquered during the war.

Sixteen months after the service's response, during which period Mengistu did not attempt to submit any further evidence in support of his motion, the board denied the motion. Stripped of boilerplate, the board's opinion consists of just two statements: (1) "[Mengistu] has attached documents to his motion to reopen which indicate that since May of 1998 [when the war broke out], the government of Ethiopia has escalated the oppression of citizens of Eritrean ethnicity. The documentation [Mengistu] has attached to his motion lead[s Mengistu] to believe that his life or freedom would be threatened because of his Eritrean ethnicity should he be deported

to Ethiopia." (2) "The [Immigration] Service contends that since the filing of [Mengistu's] motion, Ethiopia has begun withdrawing their [*sic*] troops and a United Nations peacekeeping mission has been deployed. We agree with the service's contention that country conditions have changed again so that the information provided in the respondent's motion is no longer material to his claim." (2) is the sole ground for the denial of the motion.

Had the board said that Mengistu's failure to respond to the immigration service's response raised sufficient doubts about postwar persecution of ethnic Eritreans by Ethiopia to warrant a conclusion that he had failed to carry the heavy burden required to reopen a deportation proceeding, we might not have disturbed its decision, given the deferential scope of judicial review of discretionary determinations by administrative agencies. *INS v. Doherty*, 502 U.S. 314, 322-24 (1992); *Mansour v. INS*, 230 F.3d 902, 906-07 (7th Cir. 2000); *Singh v. INS*, 213 F.3d 1050, 1052 (9th Cir. 2000); *Rodriguez-Gutierrez v. INS*, 59 F.3d 504, 508 (5th Cir. 1995). The immigration service in its brief and argument defends the decision on this ground (among others). In so doing the service violates the *Chenery* doctrine, which forbids the lawyers for an administrative agency to defend the agency's decision on a ground different from that stated or at least discernible in the decision itself. *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 285-86 (1974); *MBH Commodity Advisors, Inc. v. CFTC*, 250 F.3d 1052, 1065 (7th Cir. 2001); *Reddy v. CFTC*, 191 F.3d 109, 125-26 (2d Cir. 1999). "The [agency's] counsel raises various arguments not mentioned within or even implied by the orders on review. But the agency runs this regulatory program, not its lawyers; parties are entitled to the agency's analysis of its proposal, not post hoc salvage operations of counsel. We therefore do not consider these argu-

ments." *Florida Power & Light Co. v. FERC*, 85 F.3d 684, 689 (D.C. Cir. 1996). If Mengistu's failure to reply to the immigration service's response were a compelling ground for the denial of his motion to reopen, we could invoke harmless error and thus overlook the *Chenery* violation. (On the general principle that the doctrine of harmless error is applicable in judicial review of administrative action, see *Keys v. Barnhart*, 347 F.3d 990, 994-95 (7th Cir. 2003); *Save Our Heritage, Inc. v. FAA*, 269 F.3d 49, 61-62 (1st Cir. 2001); for the application of that principle to *Chenery* violations, see *Sahara Coal Co. v. Office of Workers' Compensation Programs*, 946 F.2d 554, 558 (7th Cir. 1991); *Illinois v. ICC*, 722 F.2d 1341, 1348-49 (7th Cir. 1983).) But Mengistu's silence does not have the weight that the immigration service assigns to it. He may have believed that since the service's response to his motion had not said that persecution of Eritreans by Ethiopia had ceased, there was no need for him to supplement his motion with additional evidence.

The only ground stated or for that matter implied in the board's decision not to reopen Mengistu's case is that the twin facts that Ethiopia was beginning to withdraw its troops from Eritrea, following the ending of the war, and that the U.N. had dispatched a peacekeeping mission showed that conditions in Ethiopia, so far as the persecution of ethnic Eritreans (like Mengistu) was concerned, had changed from what they were during the war. The ground was a non sequitur (which is why Mengistu might not have anticipated it, and therefore decided he didn't have to reply to the service's response, which advanced the same ground); and, as we tirelessly repeat, e.g., *Henderson v. Barnhart*, 349 F.3d 434, 436 (7th Cir. 2003), an agency opinion that fails to build a rational bridge between the record and the agency's legal conclusion cannot survive judicial review. (For the application of this

principle to denials of motions to reopen by the Board of Immigration Appeals, see *Mansour v. INS, supra,* 230 F.3d at 906-07; *Johnson v. INS,* 962 F.2d 574, 577 (7th Cir. 1992).) As World War II drew toward an end, the nations that Germany had occupied, notably Poland and Czechoslovakia, expelled all their citizens of German origin, several million in number. Of course the situation in Ethiopia may not be parallel. But the board did not say that. Nor, to repeat, did it say that the service's response to the motion to reopen, inconsequent as it seemed, had shifted the burden to Mengistu to present evidence that the end of the war had not been the end of the persecution. The board didn't even say that the end of the war had altered conditions of the Eritrean minority in Ethiopia back to what they had been in 1993. The board said only that it was the beginning of the withdrawal of Ethiopian troops from occupied territory and the dispatch of a U.N. peacekeeping mission that had altered the conditions on which the motion to reopen had been premised. The connection between those events and the persecution by Ethiopia of persons living, not in the part of Eritrea from which Ethiopia was withdrawing under U.N. supervision, but in Ethiopia itself is obscure.

It is telling that according to an uncontradicted statement by Mengistu's lawyer at the oral argument, Ethiopia has informed the immigration service that it will not issue Mengistu a passport—so much for a rapprochement between Ethiopia and its Eritrean minority—while Eritrea will not issue him a passport either, since he is not an Eritrean citizen. For indications that persecution of Eritreans by Ethiopia has continued despite the end of the war, see U.S. Dept. of State, Bureau of Democracy, Human Rights & Labor, *Ethiopia: Country Reports on Human Rights Practices—2002* (Mar. 31, 2003), http://www. asylumlaw.org/docs/ethiopia/usdos02_ethiopia_cr.pdf;

"Split by a Pointless War: Despite Peace, Ethiopia's Border with Eritrea Is Still Closed," *The Economist*, Sept. 21, 2002, p. 45. There are also contraindications, *Medhin v. Ashcroft*, 350 F.3d 685, 690 (7th Cir. 2003); *Araya v. Ashcroft*, No. 02-3296, 2003 WL 22475835, at *2 (3d Cir. Nov. 3, 2003), and so we do not hold or mean to imply that Mengistu's fear is well founded; that is a matter for determination on remand.

The order of the board is vacated and the matter returned to the board for further proceedings consistent with this opinion.

VACATED AND REMANDED.

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*