**Victor PAUL, Petitioner,**

v.

**Alberto GONZALES,\* Attorney General of the United States, Respondent.**

**Docket No. 03–4807.**

United States Court of Appeals, Second Circuit.

Argued: March 7, 2006.

Decided: April 6, 2006.

---

\* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Alberto R. Gonzales is automatically substituted for former Attorney General John Ashcroft as the respondent in this case.

Amy Gell of Gell & Gell (Parker Wagga-man, on the brief), New York, N.Y., for Petitioner.

Jamie M. Bennett, Assistant United States Attorney for Rod J. Rosenstein, United States Attorney for the District of Maryland, Baltimore, Md., for Respondent.

Before: CARDAMONE, CALABRESI, and HALL, Circuit Judges.

CALABRESI, Circuit Judge.

Petitioner Victor Paul (hereinafter "peti-tioner" or "Paul"), a native and citizen of Pakistan, seeks review of the Board of Immigration Appeals' ("BIA") denial of his motion to reopen his case to consider changed conditions in his native country. The BIA declined to reopen asylum pro-ceedings because evidence of intensifying persecution of Christians in Pakistan did not bear on the immigration judge's ("IJ") original adverse credibility decision, and it was on the basis of that credibility ruling that Paul was denied asylum and withhold-ing of removal in the first place. But the adverse credibility determination in this case was not a typical one. The IJ only found petitioner's stories of past persecu-tion incredible, and, in contrast, explicitly credited petitioner's testimony that he was a practicing Christian. Consequently, pe-titioner could, independently of his defeat-ed assertions of past persecution, have suc-cessfully made out a claim of a likelihood of *future* persecution by proving that, as a Christian, he would face religious persecu-tion if returned to Pakistan. Because a petition for asylum and withholding of re-moval on the basis of such a risk of *future* persecution was potentially meritorious, the BIA abused its discretion in failing even to consider evidence of deteriorating conditions for Christians in Pakistan. Ac-cordingly, we grant Paul's petition for re-view, and we vacate and remand the case to the BIA for reconsideration.

## BACKGROUND

Born in Gujarat, Pakistan in June 1945, petitioner entered the United States in

September 1994, and in August 1995, filed an asylum application, claiming religious persecution. In his written application, petitioner stated that he had faced aggression, harassment, and discrimination as a practicing Christian in Pakistan. In addition to the routine and widespread abuses supposedly faced by Christians throughout Pakistan, petitioner also described several instances in which Paul and his family were specifically targeted. In particular, petitioner claimed that he had been thrown out of a restaurant on account of his religion, and that, on one occasion, as he and his family left church, "fundamentalist" Muslims had hurled stones at his family, injuring his daughter's arm.

During a full hearing in April 1997, petitioner elaborated on the contentions he made in his written application. He testified that, shortly after he began working for the maintenance staff at the United States embassy in 1970, he was instructed to leave a restaurant because he was not Muslim. He also reiterated that, in May 1990, "fundamentalist" Muslims threw stones at him and his family as they exited their church, and that, as Paul's family fled, his daughter was struck on the upper arm by one of the stones. Petitioner stated that he decided not to report the event to the police because local law enforcement routinely turned a blind eye to the filing of such complaints. Finally, petitioner testified that, in April 1994, as he left church, two individuals approached him and asked him who Christ was. When he replied, "Jesus Christ is the son of God," the aggressors told Paul that he had insulted the Koran. They subsequently demanded that Paul come with them, and, when petitioner resisted, they dragged and beat him until a crowd (which was apparently oblivious to

the underlying conflict) forced the assailants to disperse. Afterwards, petitioner went into hiding, and a few months later left Pakistan for the United States.

Significantly, during his asylum hearing, petitioner discussed his religious beliefs and practices at some length. He relayed that he was born and raised a Christian, that he brought up his four children in the Christian faith, and that he was a member of two churches in Pakistan—the Sialkot Diocese of the Church of Pakistan (in which he was a parishioner while he lived in Gujarat, Pakistan), and Christ Church, which he joined once he moved to Rawalpindi, Pakistan in 1970. In addition, Paul recounted that, as a child, he participated in a prayer group (called Dwaya), and that, as an adult, he attended multi-day religious conventions. He also chronicled political developments in Pakistan that allegedly exacerbated discrimination against Christians, *i.e.*, the nationalization of colleges and hospitals, and the enactment of Sharia law in 1986. Moreover, in response to a series of questions from his lawyer and the IJ, petitioner gave fairly detailed descriptions of various Christian traditions and beliefs, *e.g.*, baptism, the Last Supper, Holy Communion, etc.[1]

On cross-examination, petitioner was confronted with an affidavit he had submitted to support his asylum petition. The statement was seemingly drafted by Alim Raza, who, according to the affidavit, was one of Paul's best friends. Later, petitioner testified that Raza was actually his brother-in-law. The affidavit corroborated petitioner's testimony that he had been thrown out of a restaurant because of his religion, and that his family had been pelted with stones as they left their church. The statement also indicated that Paul had

---

1. Cf. *Rizal v. Gonzales*, 442 F.3d 84, 89, 2006 WL 760242, at *4 (2d Cir. March 21, 2006) (expressly rejecting the view that "a certain level of doctrinal knowledge is necessary in order to be eligible for asylum on grounds of religious persecution").

been charged with blasphemy in Pakistan. When questioned about the contents of the affidavit, however, petitioner flatly denied that he had ever been charged with blasphemy. Asked to reconcile this manifest discrepancy, petitioner explained that, after a paralegal working in his lawyer's office had encouraged him to secure a statement corroborating his assertions, petitioner had asked his wife (who was still in Pakistan) to obtain an affidavit attesting to what he had endured. Paul also claimed that he was unaware of what the statement said since no one had translated the affidavit or reviewed its contents with him. Petitioner subsequently suggested that the aforementioned paralegal had prepared the affidavit himself.

Shortly thereafter, the hearing was adjourned. A month or so later, on May 19, 1997, the IJ issued his decision, denying petitioner's claims on adverse credibility grounds.

The IJ expressed concern that Paul's original application did not include dates either of Paul's restaurant incident or of his family's violent encounter as they left church. Those dates, the IJ observed, were supplied only during later testimony and in a subsequently-submitted affidavit. The IJ also stressed that "an exhibit which [petitioner] essentially admits ... was a falsified affidavit," provided the sole corroboration for Paul's claim. Unwilling both to accept those portions of the affidavit that supported Paul's stories of past persecution, and at the same time to disregard the part that petitioner had disavowed, the IJ entered an adverse credibility finding against Paul. The IJ also stated, however, that he was "mindful of the fact that [petitioner had] provided detailed testimony as to his Christian affiliation and

[had] provided letters, as well as sufficient detail to lead this Court to believe that [petitioner], at minimum, has some Christian affiliation." On the basis of this mixed credibility ruling, the IJ ultimately denied asylum and withholding of removal, but granted the privilege of voluntary departure.

On May 8, 2002, the BIA affirmed the IJ's decision for substantially the reasons given by the IJ. Petitioner did not appeal this decision. Instead, on July 17, 2002, petitioner filed a motion to reopen the proceedings based on updated country reports that purportedly detailed increasingly harsh conditions for Christians in Pakistan.[2] The BIA denied this motion on March 26, 2003, on the ground that the proffered evidence was not relevant to the IJ's original adverse credibility determination against petitioner:

> Our May 8, 2002 decision specifically affirmed the Immigration Judge's determination that [petitioner] failed to present a credible asylum claim. However, [petitioner's] motion to reopen does not address the Board's decision regarding the credibility of his testimony. The [petitioner] only raises arguments regarding the increased level of violence directed toward Christians in Pakistan and suggests that mannerisms acquired by [petitioner] in this country will somehow make him a target of anti-American sentiment when he returns to Pakistan. In light of [petitioner's] failure to present any new evidence relating specifically to the adverse credibility finding upon which the denial of his applications was based, the motion to reopen must be denied.

---

2. Petitioner's motion to reopen did not, everyone agrees, present any evidence that would have been relevant to the IJ's finding that

Paul had submitted a seemingly falsified affidavit in support of his petition for asylum.

Paul subsequently filed a timely petition for review, challenging the BIA's denial of his motion to reopen his case. It is to the merits of this petition that we now turn.

## DISCUSSION

■■■ We review the BIA's denial of a motion to reopen for abuse of discretion. *See Kaur v. BIA*, 413 F.3d 232, 233 (2d Cir.2005) (per curiam); *Khouzam v. Ashcroft*, 361 F.3d 161, 165 (2d Cir.2004). "An abuse of discretion may be found in those circumstances where the Board's decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements; that is to say, where the Board has acted in an arbitrary or capricious manner." *Ke Zhen Zhao v. U.S. Dep't of Justice*, 265 F.3d 83, 93 (2d Cir.2001) (internal citations omitted).

■■■ In the context of a motion to reopen, we are "precluded from passing on the merits of the underlying exclusion proceedings." *Id.* at 90. Instead, we "confine our review to the denial of petitioner's motion to reopen [the] proceedings." *Kaur*, 413 F.3d at 233. Thus, in circumstances, such as those before us, where an asylum applicant does not file a timely appeal disputing the BIA's affirmance of the IJ's credibility ruling, a motion to reopen does not provide a collateral route by which the alien may challenge the validity of the original credibility determination.

*See Ke Zhen Zhao*, 265 F.3d at 89–90; *see also Boudaguian v. Ashcroft*, 376 F.3d 825, 827 (8th Cir.2004) (concluding that a federal appeals court "lack[ed] jurisdiction to review the BIA's initial order because the [applicants] did not file a timely petition for review of that order," and that its jurisdiction was "limited to review of the BIA order denying the [applicants'] motion to reconsider its initial decision or to reopen the asylum proceedings").

\*　　\*　　\*　　\*　　\*　　\*

■■■ In appealing the denial of his motion to reopen, petitioner primarily challenges the BIA's refusal to consider evidence of changed conditions in Pakistan.[3] The BIA's decision was seemingly premised on the view that, because the IJ's original adverse credibility ruling was not appealed and therefore could not be disturbed—and because, even assuming *arguendo* that the credibility finding could be reviewed, the proffered evidence gave the BIA no reason to do so—Paul could no longer successfully petition for asylum or withholding of removal. As to claims for which proof of past persecution was essential, petitioner admits that the BIA's position was correct given that the IJ explicitly rejected as not credible his narratives of past persecution. Petitioner contends, however, that, because the IJ expressly accepted that he was a practicing Christian,[4] he could, in his motion to reopen, validly raise claims based on his undisputed status as a Christian so long as these claims did not depend on evidence of past

---

**3.** Some parts of petitioner's brief to us call into question the validity of the IJ's credibility ruling. To the extent that petitioner's arguments on appeal seek to challenge the original adverse credibility finding, we conclude—for the reasons stated earlier—that those contentions, whatever their merit, are not properly before us.

**4.** In his brief and at oral argument, petitioner rightly observed that the IJ made a "bifurcat-

ed finding" as to petitioner's credibility. The respondent's lawyer, in the course of ably and responsibly advocating the government's position, did not dispute petitioner's view. Thus, the government acknowledged, as it must, that the record before us clearly indicates that, while the IJ rejected Paul's allegations of past persecution, he accepted Paul's testimony that he was a practicing Christian.

persecution. In particular, Paul argues that he could have sought asylum and withholding of removal on the basis of a likelihood of future persecution, even though his claim of past persecution was previously rejected and, under the circumstances, cannot be revived.

For us to decide whether the BIA abused its discretion in completely ignoring potentially significant evidence, we therefore must consider whether an inviolate adverse credibility determination with respect to some of an alien's claims, *i.e.*, Paul's claims of past persecution, necessarily infects related but essentially freestanding claims made by the same applicant in the course of the same petition, *i.e.*, Paul's claims of a well-founded fear of future persecution. The prior holdings of our circuit suggest, and we now expressly hold, that, with respect to petitions for both asylum and withholding of removal, an applicant may prevail on a theory of future persecution despite an IJ's adverse credibility ruling as to past persecution, *so long as the factual predicate of the applicant's claim of future persecution is independent of the testimony that the IJ found not to be credible.*

 *Asylum*—For the purpose of deciding asylum petitions under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101 *et seq.*, we have stated that:

An applicant may qualify for refugee status in two ways. First, he may demonstrate that he has suffered past persecution, in which case a presumption arises that he has a well-founded fear of future persecution. Second, the applicant may establish that he has a well-founded fear of future persecution, which requires that the alien present credible testimony that he subjectively fears persecution and establish that his fear is objectively reasonable.

*Ramsameachire v. Ashcroft,* 357 F.3d 169, 178 (2d Cir.2004) (internal citations omitted). It follows that, under settled circuit law, an asylum claim based solely on evidence of a well-founded fear of *future* persecution is not necessarily foreclosed by an IJ's finding that an applicant's anecdotes of *past* persecution are not believable. In the instant case, because the IJ credited Paul's testimony that he was, in fact, a practicing Christian, a claim based on Paul's fear that he will be persecuted *in the future* because of his religious beliefs remained viable.[5] *See Islami v. Gonzales,* 412 F.3d 391, 394 n. 3 (2d Cir.2005) ("[W]e note that a showing of past persecution ... need not be a necessary condition for asylum eligibility to be established. An applicant who demonstrates a well-founded fear of future persecution is not required to show that he or she suffered past persecution as well." (citing *Guan Shan Liao v. U.S. Dep't of Justice,* 293 F.3d 61, 67 (2d Cir.2002))). And since a petition for asylum—based on Paul's fear of future religious persecution—could have succeeded regardless of the IJ's view of petitioner's

5. Although the IJ's bifurcated credibility ruling does not foreclose a claim of future persecution, it does affect how Paul may go about proving the subjective and objective validity of his fear. For instance, petitioner cannot assert that he subjectively fears persecution on the basis of what his family purportedly endured in the past. But, Paul can still validly claim that he subjectively fears persecution because he is a Christian. For that aspect of petitioner's testimony was expressly found believable by the IJ, and the BIA's decision did nothing to alter that conclusion. As to the objective reasonableness of Paul's fear, due to the IJ's credibility ruling, Paul's claim of future persecution does not benefit from the presumption in his favor that would have been established had past persecution been proven. But, proof of worsening country conditions in Pakistan can still furnish evidence that Paul's fear of future persecution is objectively reasonable.

stories of past persecution, evidence of how Christians are currently being treated in Pakistan should have been considered. Because the BIA "inexplicably depart[ed] from established policies," *Ke Zhen Zhao,* 265 F.3d at 93, we conclude that the BIA abused its discretion in denying the motion to reopen without at least considering the country report submitted by petitioner.

*Withholding of Removal*—Paul's original application, which he sought to reopen, also contained a petition for withholding of removal under 8 U.S.C. § 1231. Since withholding of removal, unlike asylum, may only be requested on the basis of a probability of future persecution, determining whether a withholding claim remained viable despite the IJ's credibility ruling requires a somewhat different analysis from the one just made.

■ It is well-settled that the burden of proof for a withholding of removal claim is higher than the burden of proof for an asylum claim. *See Abankwah v. INS,* 185 F.3d 18, 21–22 (2d Cir.1999). Hence, it might be thought that a valid adverse credibility decision as to a significant portion of an applicant's asylum claim, *i.e.,* his allegations of past persecution, would inexorably foreclose a petition for withholding of removal. We have previously presented this very position—in dicta [6]—in *Ramsameachire,* where we stated that "an applicant who cannot establish his eligibility for asylum is necessarily unable to establish his eligibility for withholding of removal." *Ramsameachire,* 357 F.3d at 183 (quoting *Wu Biao Chen v. INS,* 344 F.3d 272, 275

(2d Cir.2003) (per curiam)) (internal quotations marks omitted).

■ But, in *Ramsameachire* itself, with respect to claims under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), Dec. 10, 1984, S. Treaty Doc. No. 100–20, 1465 U.N.T.S. 85—which are also subject to a higher standard of proof than asylum claims, *i.e.,* that the "alien is more likely than not to be tortured in the country of removal," 8 C.F.R. § 208.16(c)(4)—we firmly held that an IJ may not deny a CAT claim solely on the basis of an adverse credibility finding. *See Ramsameachire,* 357 F.3d at 184–85.[7] In support of this conclusion, we reasoned that claims for CAT relief "focus[ ] solely on the likelihood that the alien will be tortured if returned to his or her home country, regardless of the alien's subjective fears of persecution or his or her past experiences. Unlike an asylum claim, the CAT claim lacks a subjective element, focuses broadly on torture without regard for the reasons for that treatment, and requires a showing with respect to future, rather than past, treatment." *Id.* at 185. As a consequence, "an alien's CAT claim may be established using different evidence and theories than the alien's claims under the INA," and "an adverse credibility determination made in the asylum context should not necessarily affect the BIA's consideration of the alien's CAT claim." *Id.*

Withholding claims, like CAT claims, lack a subjective component and are con-

---

**6.** The asylum seeker in *Ramsameachire* did not challenge the BIA's rejection of his withholding claim. *See Ramsameachire,* 357 F.3d at 183. That claim, therefore, had been waived, *see Yueqing Zhang v. Gonzales,* 426 F.3d 540, 541 n. 1 (2d Cir.2005), and, as a result, our musing on whether a withholding claim was necessarily barred by the rejection

of an asylum claim on adverse credibility grounds was dicta.

**7.** This holding was limited to those situations in which the adverse credibility finding did not negate all of the factual bases of the applicant's claim of a likelihood of future persecution. *See infra.*

cerned only with objective evidence of future persecution. The INA's withholding provision, 8 U.S.C § 1231(b)(3)(A), states that "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." In *INS v. Cardoza–Fonseca*, 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987), the Supreme Court held that the " 'would be threatened' language of [this provision] has no subjective component," and, hence, the alien must "establish by objective evidence that it is more likely than not that he or she will be subject to persecution upon deportation." *Cardoza–Fonseca*, 480 U.S. at 430, 107 S.Ct. 1207.

■ Because withholding claims, just like petitions for CAT relief, depend on objective evidence of future persecution, the rationale we enunciated in *Ramsameachire* in holding that adverse credibility rulings as to asylum do not necessarily bar relief under the CAT must similarly apply in the withholding context. Accordingly, we now conclude that a withholding of removal claim under 8 U.S.C. § 1231, premised exclusively on objective evidence of future persecution, may, in appropriate instances, be sustained even though an IJ, in the context of an asylum claim, has found not credible the applicant's testimony alleging past persecution.

■ This does not mean, of course, that where a withholding claim is based on the very fact, or set of facts, that the IJ found not to be credible, that an adverse credibility ruling will not preclude the withholding claim. Indeed, in such circumstances, we have routinely decided in any number of cases before and after *Ramsameachire* that a withholding of removal claim was meritless since the alien's

asylum claim had failed on adverse credibility grounds. *See e.g., Majidi v. Gonzales,* 430 F.3d 77, 81–82 (2d Cir.2005); *Zhou Yi Ni v. U.S. Dep't of Justice,* 424 F.3d 172, 174–75 (2d Cir.2005) (per curiam); *Xu Duan Dong v. Ashcroft,* 406 F.3d 110, 112 (2d Cir.2005) (per curiam); *Zhou Yun Zhang v. INS,* 386 F.3d 66, 71 (2d Cir.2004); *Xusheng Shi v. BIA,* 374 F.3d 64, 65 (2d Cir.2004) (per curiam); *Wu Biao Chen,* 344 F.3d at 275; *Gomez v. INS,* 947 F.2d 660, 665 (2d Cir.1991).

In all these cases, the factual predicate of the alien's withholding claim was based on the same assertions that the IJ had found incredible in denying the applicant's asylum claim. For example, in *Wu Biao Chen* (which was decided before *Ramsameachire*), the only evidence of a future threat to life or freedom was petitioner's contention, which the IJ found not to be believable, that he had held certain political views and had participated in political activities in his native country. *See Wu Biao Chen,* 344 F.3d at 274. Because that same factual assertion was needed for either the asylum or the withholding claim, the credibility ruling necessarily foreclosed relief in both. *See also Gomez,* 947 F.2d at 663 (insufficient evidence that the applicant's purported persecutors were inclined to harm her, which formed the sole basis of the alien's asylum and withholding claims).

And, in *Zhou Yi Ni* (which was decided after *Ramsameachire*), the only basis for the applicant's asylum and withholding claims was a sterilization that government officials had allegedly forced the applicant's wife to undergo. Because the IJ found the applicant's testimony incredible as to the sterilization, *see Zhou Yi Ni,* 424 F.3d at 174, both asylum and withholding of removal were necessarily rendered meritless by the credibility determination. *See also Majidi,* 430 F.3d at 80 (sole basis

for asylum and withholding was petitioner's testimony that he was harassed and persecuted for his political views, which the IJ validly found to be incredible); *Zhou Yun Zhang*, 386 F.3d at 70 (assertion that wife was forcibly sterilized, which the IJ correctly found incredible, was the only basis for alien's petition for asylum and withholding of removal); *Xusheng Shi*, 374 F.3d at 66 (same as *Zhou Yun Zhang*).

Similarly, in the analogous context of CAT claims, we have held that a petition for CAT relief may fail because of an adverse credibility ruling rendered in the asylum context where the factual basis for the alien's CAT claim was the same as that rejected in his asylum petition. For instance, in *Xue Hong Yang v. U.S. Dep't of Justice*, 426 F.3d 520 (2d Cir.2005), an IJ had "validly found, on the basis of inconsistent and implausible statements by Yang and her husband, that Yang had failed to establish a particular fact—Yang's forced sterilization—and that fact formed the only potentially valid basis for Yang's CAT claim." *Xue Hong Yang*, 426 F.3d at 523. We therefore concluded in *Xue Hong Yang* that the BIA had not erred in denying CAT relief on the basis of the IJ's credibility ruling with respect to the applicant's asylum claim. In so doing, we distinguished our decision in *Ramsameachire* on the ground that the applicant in that case had a "completely separate factual basis" for his CAT claim. *Id.*

Unlike all those decisions—*i.e.*, the pre- and post*Ramsameachire* withholding cases and the more recent CAT claim case, *Xue Hong Yang*—the withholding claim that petitioner seeks to reopen in this case does not rest on, or in any way require, the validity of his defeated allegations of past persecution. For Paul's petition for withholding of removal to succeed, he needs (1) to establish that he possessed the relevant characteristic, *i.e.*, that he was, in fact, a practicing Christian, and (2) to present sufficient objective evidence that, if returned to Pakistan, he would likely be persecuted on the basis of his religious beliefs. The government has conceded that Paul was found to have credibly testified that he was a practicing Christian. In order to prevail, he therefore only needs to demonstrate, through the proffer of enough valid evidence, that he would likely be persecuted because of his religion. Proof that persecution of Christians in Pakistan has become more common, intense, or far-reaching—*i.e.*, the very proof that petitioner purports to have presented in filing his motion to reopen—would clearly bear on this objective inquiry. Under the circumstances, the BIA's refusal even to consider such evidence constitutes an abuse of discretion. *See* 8 C.F.R. § 1003.2(c)(3)(ii); *see also Poradisova v. Gonzales*, 420 F.3d 70, 78, 81 (2d Cir.2005) ("When an applicant moves to reopen his case based on worsened country conditions, and introduces previously unavailable reports that materially support his original application, the BIA has a duty to consider these reports and issue a reasoned decision based thereon, whether or not these reports are clearly determinative." (emphasis omitted)).

For the foregoing reasons, we grant Paul's petition for review, we VACATE the BIA's denial of petitioner's motion to reopen, and we REMAND the case for further proceedings consistent with this opinion.