In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 06-2407

ASTER WORKU GEBREEYESUS,

*Petitioner,*

*v.*

ALBERTO R. GONZALES,

*Respondent.*

———————

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A79 257 093

———————

ARGUED FEBRUARY 28, 2007—DECIDED APRIL 6, 2007

———————

Before RIPPLE, MANION, and KANNE, *Circuit Judges*.

KANNE, *Circuit Judge*. Aster Worku Gebreeyesus, an Ethiopian citizen of Amhara ethnicity, petitions for review of the order of the Board of Immigration Appeals denying her motion to reopen her claims for asylum, withholding of removal, and relief under the Convention Against Torture. Worku[1] originally claimed that Ethiopian authorities imprisoned and beat her because she and her first husband participated in a government opposition group, the All Amhara People's Organization ("AAPO"). After the BIA affirmed the Immigration Judge's denial of

———————

[1] The petitioner uses "Worku" as her surname.

her claims, Worku moved to reopen the proceedings based on evidence that conditions in Ethiopia had deteriorated for government opponents. Because the BIA did not consider Worku's evidence and did not explain why her new evidence was insufficient to change the outcome of the proceedings, we grant the petition and remand.

**I.  History**

Since 1991 a coalition called the Ethiopian People's Revolutionary Democratic Front (EPRDF) has controlled the Ethiopian government. The EPRDF is comprised mostly of ethnic Tigrayans. Worku, by contrast, is a member of the Amhara ethnic group.[2] She opposes the EPRDF and alleges that it persecutes ethnic Amharas.

Worku arrived in the United States on a visitor's visa in 2000 and applied for asylum three months later, claiming past persecution based on her support of the AAPO and her Amhara ethnicity. In support of her application, Worku submitted evidence that she, her father, and her husband belonged to the AAPO, a political group that Worku describes as devoted to promoting democracy and protecting the Amharic people from government oppression. She stated that the EPRDF imprisoned her father and husband during the 1990s and both of them died in prison. Worku claimed that on several occasions police detained and interrogated her about her AAPO activities, and that beginning in late 1999 she was imprisoned for seven months. She claimed that police verbally and

---

[2]  Although the Ethiopian population is 25% Amhara and only 7% Tigre, *see* U.S. Dep't of State, Background Note: Ethiopia (Dec. 2006), http://www.state.gov/r/pa/ei/bgn/2859.htm., the Tigrayans dominate the EPRDF, *see* U.S. Dep't of State, Country Reports on Human Rights Practices: Ethiopia 2002 (March 31, 2003).

physically abused her throughout her detention, and that when she was finally released on bail, she fled to the United States.

The IJ did not believe Worku's story. He found that inconsistencies between her testimony and other record evidence discredited her, and he questioned the authenticity of the documents she submitted to demonstrate her AAPO membership. Because he found her claims unpersuasive, the IJ denied her application and ordered her removed. Worku appealed, and the BIA affirmed in May 2005. She filed a motion to reopen based on her marriage to a U.S. citizen later that year; the BIA denied the motion because it was filed out of time.

Worku filed the current motion to reopen in March 2006, arguing that changed circumstances in Ethiopia qualify her for an exception to the time and numerical limitation requirement of 8 C.F.R. § 1003.2(c)(3)(ii). As evidence of these changed conditions, Worku submitted numerous reports and articles describing a government crackdown against opposition parties after the May 2005 national elections in which the EPRDF won a third consecutive five-year term. Many opposition parties refused to accept the election results, and the EPRDF began the crackdown after the Coalition for Unity and Democracy ("CUD")—a political opposition group—called for widespread protests. The 2005 State Department Country Report on Ethiopia, for instance, addressed the post-election violence generally, stating that "authorities arbitrarily detained, beat, and killed opposition members [and] ethnic minorities . . ." and that "attacks by police, the army, and militia against members of the opposition and the general public escalated . . . ." It also reported that security forces began targeting those suspected of sympathizing with the opposition.

Worku also submitted evidence that these changed conditions gave her reason to fear that she would be

targeted for persecution if returned to Ethiopia. That evidence included two letters from her brother: the first stating that in November 2005 police entered her family's home and arrested another brother (who was an active CUD member), and the second reporting that their home was under close government surveillance. Worku also presented a letter from the Chairman of the Chicago Chapter of the Ethiopian National Congress, stating that Worku's activities in the United States would "unquestionably jeopardize her safety should she be forced to go to Ethiopia." Her own affidavit reiterated her fears that she would be targeted and mistreated upon return due to the changed conditions, the EPRDF's detention of her brother and surveillance of her home, and her activities while in exile.

The BIA denied Worku's motion to reopen, summarily finding no evidence of changed conditions. The BIA noted that her brother's letters were neither sworn nor authenticated and stated that "particularly in view of the [IJ]'s adverse credibility determination . . . [the new evidence] is insufficient to change the result of our previous decision."

## II. Analysis

Worku argues that the BIA ignored her evidence of changed country conditions and abused its discretion by rejecting that evidence without explanation. She argues that the BIA also abused its discretion in finding that her new evidence would not change the outcome of her claims for asylum, withholding of removal, and protection under the CAT. Specifically, she argues that this finding lacks a rational basis and is based on improper credibility determinations.

The BIA may reopen removal proceedings if the applicant submits material evidence of changed country condi-

tions that was not available and could not have been presented at her prior hearing. 8 C.F.R. § 1003.2(c)(3)(ii); *Lin v. Gonzales*, 435 F.3d 708, 710 (7th Cir. 2006). We review the BIA's denial of a motion to reopen for abuse of discretion only. *Gomes v. Gonzales*, 473 F.3d 746, 752 (7th Cir. 2007). The BIA is required, however, "to issue opinions with rational explanations and adequate analysis of the record," *see Kay v. Ashcroft*, 387 F.3d 664, 674 (7th Cir. 2004) (citation omitted), and to "announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted," *see Mansour v. INS*, 230 F.3d 902, 908 (7th Cir. 2000) (citation omitted).

Here, the government concedes that the BIA "did not devote much discussion to Ms. Worku's motion," but that is an understatement; the BIA gave no reasoned explanation for its finding that Worku had not provided evidence of changed conditions. Its rejection of the State Department Country Report is particularly questionable; we recently held that the BIA abused its discretion by failing to articulate any reasons for rejecting evidence of changed conditions in Ethiopia, and particularly for ignoring the very same country report which states that the EPRDF has become more aggressive in cracking down on opposition protestors since the May 2005 elections. *See Kebe v. Gonzales*, 473 F.3d 855, 857-58 (7th Cir. 2007). At oral argument the government attempted to distinguish *Kebe* on the basis that the petitioner in that case, unlike Worku, was a member of a particular opposition group called the Oromo Liberation Front ("OLF"). That distinction is beside the point, however; the country report did not single out the OLF as the only opposition group targeted for increased repression. The significance of our decision in *Kebe* for this case is that the BIA's blanket rejection of Worku's evidence calls into question whether it even considered that evidence, and without any explana-

tion, its decision is unreviewable. *See id.* at 857-58 (and cases cited therein).

The BIA also concluded that Worku's new evidence would not change the result of her case, but the only two reasons it gave to support that conclusion are flawed. First, it stated that Worku's brother's letters were "neither sworn nor authenticated." Although official records require authentication, *see* 8 C.F.R. § 287.6, that rule does not apply to unsworn statements of facts or letters from family members, *see Jiang v. Gonzales*, 474 F.3d 25, 29 (1st Cir. 2007); *see also Rizal v. Gonzales*, 442 F.3d 84, 91 (2d Cir. 2006); *Georgis v. Ashcroft*, 328 F.3d 962, 969 (7th Cir. 2003). Second, the BIA reasoned that the new evidence, "particularly in view of the [IJ]'s adverse credibility determination which this Board affirmed," was insufficient to change the result of its previous decision. But Worku may "prevail on a theory of future persecution despite an IJ's adverse credibility ruling as to past persecution, so long as the factual predicate of [her] claim of future persecution is independent of the testimony that the IJ found not to be credible." *Paul v. Gonzales*, 444 F.3d 148, 154 (2d Cir. 2006) (emphasis omitted); *see also Mansour*, 230 F.3d at 908-09 (noting that an adverse credibility determination in the asylum context should not "wash over" to a separate claim based on distinct facts). The factual basis for Worku's theory of future persecution—a government crackdown against opposition sympathizers including her brother—is distinct from her evidence of past persecution concerning her detention and beating for participating in the AAPO.[3] Given these

---

[3] The BIA's reliance on the prior adverse credibility finding is especially unsound because it ignored the facts in Worku's affidavit supporting her theory of future persecution. In that affidavit, Worku stated that she feared being targeted by the
(continued...)

distinct facts, the prior adverse finding need not undermine Worku's theory of future persecution.

The government argues that the BIA correctly determined that Worku's new evidence would not change the outcome of the case because she did not show that the EPRDF targets the Amhara people or that she reasonably fears persecution based on her activities in exile or her brother's imprisonment. But under the *Chenery* doctrine, the government may not defend the BIA's decision on grounds that are not stated—or at least discernible—in the decision itself. *See Mengistu v. Ashcroft*, 355 F.3d 1044, 1046-47 (7th Cir. 2004) (discussing *SEC v. Chenery Corp.*, 332 U.S. 194 (1947)). The principal bases for the BIA's decision were the lack of authentication of the brother's letters and the prior adverse credibility finding; the BIA said nothing about the EPRDF's treatment of the Amhara people or the reasonableness of her fears of future persecution. Because "judges cannot resolve administrative litigation on grounds that the agency ignored," and because the reasons the BIA supplied are deficient, remand is warranted. *See Banks v. Gonzales*, 453 F.3d 449, 451 (7th Cir. 2006).

This court could overlook the *Chenery* violation if the BIA's errors were harmless, *see Mengistu*, 355 F.3d at 1047, but that is not the case here. Worku submitted evidence not only that conditions for EPRDF opponents have changed, but that the government has targeted her

---

[3] (...continued)
government based on her brother's detention and her status as an exile supporting the opposition movement. At the motion to reopen stage, unless the BIA finds Worku's affidavit "inherently unbelievable," it must accept the affidavit's veracity. *See Fessehaye v. Gonzales*, 414 F.3d 746, 755 (7th Cir. 2005) (quoting *Ordonez v. INS*, 345 F.3d 777, 786 (9th Cir. 2003)).

family members and put her home under surveillance as a result of her brothers' political activities. Worku also presented evidence corroborating that she has played a leadership role in protesting the EPRDF while in the United States, and that the EPRDF imputes opposition opinions to Ethiopians in exile. This evidence may or may not entitle Worku to relief, "[b]ut these are puzzles for the immigration judge to try to unravel in the first instance, and not a reviewing court." *See Lian v. Ashcroft*, 379 F.3d 457, 461 (7th Cir. 2004); *Mengistu*, 355 F.3d at 1048.

### III.  Conclusion

The BIA abused its discretion by failing to explain its denial of Worku's motion to reopen. We therefore grant her petition for review and remand.

A true Copy:

        Teste:

                            _____
                            *Clerk of the United States Court of*
                            *Appeals for the Seventh Circuit*