LIPEZ, Circuit Judge,
dissenting.
In an effort to avoid remanding this case to the BIA, the majority constructs reasoning not present in, and indeed directly contradicted by, the BIA’s decision. As I shall explain, the BIA did not consider and reject Rasiah’s claim of pattern or practice persecution on the merits. Instead, on initial appeal and again on the motion to reopen, the BIA declined to address Rasi-ah’s pattern or practice claim in view of the Id’s adverse credibility finding as to Rasiah’s personal accounts of past persecution. The BIA committed a legal error by concluding that the adverse credibility finding as to past persecution doomed Ra-siah’s pattern or practice claim. Therefore, I respectfully dissent. This case must be remanded to the BIA so that Rasiah’s properly presented pattern or practice claim may be heard in the first instance.[3]
*7 I.
In our review of the BIA’s decision, we cannot invent grounds for affirmance and ascribe them to the agency. Instead, we must “judge the action of an administrative agency based only on reasoning provided by the agency, and not based on grounds constructed by the reviewing court.” El Moraghy v. Ashcroft, 331 F.3d 195, 203 (1st Cir.2003) (quotation marks and citation omitted) (remanding where IJ failed to state conclusions on several important issues); see also Halo v. Gonzales, 419 F.3d 15, 18-19 (1st Cir.2005) (“[A] reviewing court ... must judge the propriety of [administrative] action solely by the grounds invoked by the agency, and that basis must be set forth with such clarity as to be understandable.” (internal quotation marks and citation omitted)). In this case, the majority affirms not on grounds provided by the BIA, but on grounds constructed by the majority.
The majority asserts that the BIA “addressed Rasiah’s pattern or practice claim by quoting the IJ’s conclusion that simply by being a Tamil Rasiah was not entitled to a ‘blank check in order to receive asylum.’ ” The majority then proceeds to affirm this purported reasoning by the BIA, concluding that “[t]he treatment of Tamils, however deplorable, is not of a reach that entitles every Tamil in Sri Lanka to asylum based on ethnicity alone.” However, the record makes clear that the BIA did not, as the majority suggests, consider the submitted evidence of country conditions and conclude that Rasiah failed to establish systematic persecution of Tamils in Sri Lanka. See 8 C.F.R. § 208.13(b)(2)(iii); Balachandran, 566 F.3d at 272. Instead, the BIA expressly deemed it unnecessary to address Rasiah’s pattern or practice claim in light of the IJ’s prior adverse credibility finding as to Rasiah’s accounts of past persecution.
Proving a well-founded fear of future persecution “generally requires individualized evidence that the applicant will be ‘singled out’ for persecution upon return to his home country.” Kho, 505 F.3d at 54. The analysis of a pattern or practice claim, however, is different. Under the governing regulations, an asylum applicant need not demonstrate that he will be “singled out individually” for future persecution if the applicant establishes (1) “that there is a pattern or practice in his or her country of nationality ... of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion,” and (2) “his or her own inclusion in, and identification with, such group of persons such that his or her fear of persecution upon return is reasonable.” 8 C.F.R. § 208.13(b)(2)(iii).
As the majority recognizes, evidence of prevailing country conditions may be relevant to either an individualized persecution claim or a pattern or practice claim. For example, evidence of country conditions may provide context and corroboration for the asylum applicant’s personal accounts of past persecution, thereby bolstering an individualized showing of persecution. See El Moraghy, 331 F.3d at 203-04. Alternatively, evidence of prevailing country con *8 ditions may establish a pattern or practice of persecution of persons similarly situated to the applicant, making it unnecessary for the applicant to demonstrate that he will be singled out individually for persecution.
In this case, the BIA decision’s only reference to Rasiah’s pattern or practice claim appears in a footnote in which the BIA expressly deemed it unnecessary to address the claim. The BIA concluded:
Inasmuch as the respondent cannot meet his burden of proof without providing credible testimony as a result of the amendments created by the REAL ID Act, we do not deem it necessary to address his arguments on appeal pertaining to either his “pattern or practice” theory of relief or his claim based on a “particular social group” consisting of failed Sri Lan-kan asylum seekers.
(Emphasis added.) The majority ignores this express statement of the BIA that it was not necessary to address Rasiah’s pattern or practice claim, and instead asserts that the BIA addressed and rejected this claim on the merits. The majority relies on a portion of the BIA decision in which the BIA adopted the IJ’s reasoning that although Rasiah submitted country reports and other evidence of widespread abuses of Tamils in Sri Lanka, his Tamil ethnicity “does not give [the respondent] a blank check in order to receive asylum.” However, read in context, it is clear that this portion of the BIA decision was addressed to Rasiah’s individualized persecution claim, not his pattern or practice claim. In the portion of the BIA decision highlighted by the majority, the BIA concluded that the IJ properly based her adverse credibility finding in part on Rasiah’s failure to corroborate basic elements of his past persecution claim, including his testimony that his brother and sister were shot and that his alleged relative, Gowrivalan, was shot and killed. The BIA then stated, in a footnote:
On appeal the respondent contends that the Immigration Judge erroneously failed to consider the “overwhelming background materials” on country conditions as corroborative of the respondent’s asylum claim.... However, as the Immigration Judge explained in her decision, just arriving in the United States from Sri Lanka “does not give [the respondent] a blank check in order to receive asylum” (I.J. at 21). Rather, first and foremost, the respondent must be credible, and then the respondent must meet his burden of proof of establishing that he is a refugee within the meaning of the Act. See sections 208(b)(1)(B)(i), (iii) of the Act (added by REAL ID Act § 101(a)(3)); 8 C.F.R. § 1208.13(a); Matter of J-Y-C-, [24 I & N Dec. 260,] 266 [(BIA 2007)]. In this case, the respondent failed to testify credibly and, as a result, failed to meet his burden of proof.
As this passage makes clear, the BIA was responding to Rasiah’s argument that the evidence of country conditions corroborated his testimony that he and his family had personally experienced past persecution. Adopting the IJ’s reasoning, the BIA concluded that Rasiah had failed to credibly testify that he or his family were targeted for past persecution, and therefore he had made no individualized showing of past persecution that might be corroborated or otherwise supported by evidence of country conditions. The BIA did not address the distinct question of whether the evidence of country conditions established a pattern *9 or practice of persecution under 8 C.F.R. § 208.13(b)(2)(iii), a claim that could have succeeded regardless of whether Rasiah credibly testified that he and his family were singled out for persecution in the past.
The BIA similarly declined to address the merits of Rasiah’s pattern or practice claim on his motion to reopen. The BIA concluded that “even the fairly voluminous evidence of current country conditions in Sri Lanka that the respondent has submitted with his motion would [not] have resulted in a different disposition of the respondent’s case because none of this evidence ameliorates the factual bases of the adverse credibility finding.”
The majority relies on prior cases in which we have sustained the BIA’s rejection of pattern or practice claims by ethnically Tamil Sri Lankans. See, e.g., Balachandran, 566 F.3d at 272-73; Ratnasingam, 556 F.3d at 14. In these cases, however, we reviewed a finding by the BIA that the petitioner had failed to establish a pattern or practice of persecution in his country, and concluded that the evidence did not compel a contrary conclusion. By contrast, in cases in which the BIA has failed to address a Sri Lankan Tamil’s pattern or practice claim altogether, courts have remanded to the BIA to address this issue in the first instance. See Rasananthan v. U.S. Att’y Gen., 337 Fed.Appx. 811, 813-14 (11th Cir.2009) (per curiam) (remanding where BIA failed to address pattern or practice claim by ethnically Tamil Sri Lankan); Thavendran v. Gonzales, 211 Fed.Appx. 74, 75 (2d Cir.2007)(summary order)(same); see also Balachandran, 566 F.3d at 273 n. 1 (concluding that the BIA “considered and rejected” Sri Lan-kan Tamil’s pattern or practice claim, and distinguishing a case cited by the petitioner in which “the government filed a motion to remand in the 11th Circuit where the BIA had failed to address a pattern-or-practice theory in any way,” Vijayaratnam v. Holder, No. 09-10275 (11th Cir. Apr. 21, 2009)).
In this case, the BIA did not consider the evidence Rasiah submitted of frequent and escalating violence against Tamils in Sri Lanka, but instead expressly deemed it unnecessary to address Rasiah’s pattern or practice claim. Because the BIA failed to address the pattern or practice claim on the merits, the case must be remanded to the BIA to address this issue in the first instance. See INS v. Ventura, 537 U.S. 12, 16, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002)(per curiam); see also id. at 17, 123 S.Ct. 353 (citing considerations that support the “ordinary remand requirement” in the immigration context, including that “[t]he agency can bring its expertise to bear upon the matter; it can evaluate the evidence; it can make an initial determination; and, in doing so, it can, through informed discussion and analysis, help a court later determine whether its decision exceeds the leeway that the law provides”); Cordero-Trejo v. INS, 40 F.3d 482, 492 (1st Cir.1994) (remanding where BIA failed to address petitioner’s claim of pattern or practice persecution).
The majority goes to great lengths to construct grounds for affirmance and avoid remanding this case to the BIA. In the end, the majority’s opinion appears to be driven by a conviction that remand would be futile because Rasiah’s pattern or practice claim would likely be rejected by the BIA. However, the reviewing court is not authorized to make that determination in the first instance. Regardless of whether this court believes Rasiah’s claim will be successful, he is entitled to have his claim heard and addressed on the merits by the BIA.
*10 II.
Having concluded that the BIA did not address Rasiah’s pattern or practice claim on the merits and that the reviewing court cannot address that claim in the first instance, I next address the question of whether the BIA erroneously deemed it unnecessary to address his pattern or practice claim in light of the IJ’s adverse credibility finding.[4] I conclude that the BIA erred in determining that the adverse credibility finding as to Rasiah’s accounts of past persecution precluded him from establishing a pattern or practice claim.
As the majority acknowledges, a prior adverse credibility finding as to past persecution does not necessarily foreclose a claim for asylum based on independent evidence of future persecution. As the Second Circuit has explained, with respect to petitions for both asylum and withholding of removal, “an applicant may prevail on a theory of future persecution despite an IJ’s adverse credibility ruling as to past persecution, so long as the factual predicate of the applicant’s claim of future persecution is independent of the testimony that the IJ found not to be credible.” Paul v. Gonzales, 444 F.3d 148, 154 (2d Cir.2006). The other circuits to have addressed this issue are in accord. See Vakeesan v. Holder, 343 Fed.Appx 117, 125-26, No. 08-3622, 2009 WL 2591034, at *9 (6th Cir. Aug. 21, 2009); Rasananthan, 337 Fed.Appx. at 813-14; Gebreeyesus v. Gonzales, 482 F.3d 952, 955 (7th Cir.2007).
In Paul, the IJ denied the petitioner’s asylum claim on adverse credibility grounds, finding his stories of past persecution unsupported, but credited his testimony that he was a practicing Christian. 444 F.3d at 152. The petitioner filed a motion to reopen based on updated country reports indicating increased persecution of Christians in Pakistan, and the BIA denied the motion, reasoning that the petitioner had failed to present any evidence challenging the adverse credibility finding. Id. On appeal, the court concluded that the petitioner’s claim that he feared future persecution as a Christian “could have succeeded regardless of the IJ’s view of petitioner’s stories of past persecution.” Id. at 154-55. It thus held that the BIA abused its discretion in denying his motion to reopen without considering the objective evidence of deteriorating conditions for Christians in Pakistan. Id. at 155; see also Lin v. U.S. Dep’t of Justice, 247 Fed.Appx. 228, 232 (2d Cir.2007)(summary order)(applying Paul to hold that remand was required where BIA did not address the merits of petitioner’s pattern or practice claim and this claim was independent of the testimony found not credible).
Here, too, Rasiah’s claim for asylum based on a pattern or practice of persecution against Tamils relies on facts independent of the testimony found not credible, and the prior adverse credibility finding does not foreclose his pattern or practice claim. The IJ found, and the BIA agreed, that Rasiah’s accounts of past persecution were inconsistent and uncorroborated. However, Rasiah’s pattern or practice claim is a claim that he has a well-founded fear of future persecution. It relies not on his personal accounts of past persecution, but on proof of (1) objective evidence of a pattern or practice of persecution of Tamils in Sri Lanka, and (2) his Tamil ethnicity. See 8 C.F.R. § 208.13(b)(2)(iii). Thus, Rasiah’s claim for asylum based on a pattern or practice of persecution of Tamils *11 “could have succeeded regardless of the IJ’s view of [Rasiah’s] stories of past persecution,” see Paul, 444 F.3d at 154-155, and the BIA erred in failing to consider Rasiah’s proffered evidence of deteriorating conditions for Tamils in Sri Lanka.
The government relies on Ramsameachire v. Ashcroft, 357 F.3d 169 (2d Cir.2004), a Second Circuit case decided prior to Paul, to argue that the IJ’s adverse credibility determination precluded Rasiah from demonstrating a subjective fear of future persecution. In Ramsameachire, the IJ found that the petitioner had not demonstrated a credible fear of future persecution, noting that his stated reasons for fearing return to his native country had changed.[5] Id. at 176-77. The BIA upheld the IJ’s adverse credibility finding and reasoned that, in light of that finding, it need not address the petitioner’s pattern or practice claim. Id. at 177. The Second Circuit affirmed the BIA’s decision, holding that the IJ’s adverse credibility finding as to his subjective fear of future persecution foreclosed his claim for asylum based on a pattern or practice of persecution, because “[ajlthough [the petitioner’s] pattern or practice evidence was relevant to the objective reasonableness of his fear of persecution, the BIA’s adverse credibility determination precluded him from establishing the subjective prong of the well-founded fear standard.” Id. at 183.
Even if I were to adopt Ramsamea-chire’s reasoning, it would not lead me to the conclusion that the IJ’s credibility finding in this case precluded Rasiah from establishing a subjective fear of future persecution. Unlike in Ramsameachire, where the IJ noted the petitioner’s shifting explanations for his claimed fear of returning to his native country and expressly concluded that he failed to establish a credible subjective fear of future persecution, see id. at 176-77, here the IJ disbelieved Rasiah’s stories of past persecution. As the Second Circuit explained in Paul, an adverse credibility finding as to past persecution does not preclude a petitioner from showing a subjective fear of future persecution. Instead, the adverse finding affects how the petitioner can prove the subjective element of his fear. 444 F.3d at 154 n. 5. In Paul, for example, the court noted that the petitioner could not “assert that he subjectively fears persecution on the basis of what his family purportedly endured in the past” because the IJ had disbelieved those accounts of past persecution. Id. However, the petitioner could “still validly claim that he subjectively fears persecution because he is a Christian.” Id. Similarly, here, Rasiah cannot claim a subjective fear of future persecution based on the discredited accounts of past persecution, but he could still attempt to establish that he subjectively fears future persecution based on his Tamil ethnicity and a pattern or practice of persecution of Tamils.
Of course, if the IJ had found that Ra-siah failed to credibly establish his Tamil ethnicity, his pattern or practice claim would necessarily fail. See 8 C.F.R. § 208.13(b)(2)(iii)(B) (an asylum applicant must establish “his or her own inclusion in, and identification with, such group of persons such that his or her fear of persecution upon return is reasonable”). However, the IJ did not indicate, and the government does not contend, that the IJ disbelieved petitioner’s testimony as to his Tamil ethnicity. Indeed, the IJ appeared to credit this testimony, stating that “the respondent, by the fact that he is a Tamil, *12 by the fact he is from Sri Lanka, that does not give him ... a blank check in order to receive asylum in the United States.”[6]
In its denial of Rasiah’s initial appeal, and again in its denial of his motion to reopen, the BIA committed an error of law in concluding that the adverse credibility finding as to Rasiah’s accounts of past persecution precluded him from establishing a claim of pattern or practice persecution. I would remand this case to the BIA to address the merits of Rasiah’s pattern or practice claim in the first instance. See Ventura, 537 U.S. at 16, 123 S.Ct. 353.

. The majority appears to fault Rasiah for not raising his pattern or practice claim orally at the hearing before the IJ, and instead raising this claim for the first time in a written memorandum submitted after the hearing. However, the majority fails to note that at the conclusion of Rasiah’s testimony before the IJ, Rasiah's counsel asked to present oral *7 argument. The IJ instructed counsel that “if you want to submit a closing, submit it in written form...." In compliance with that instruction, Rasiah then filed a written memorandum of law in which he squarely raised his pattern or practice claim, citing to the governing regulations and the documentary evidence of country conditions he had submitted at the hearing. This memorandum was submitted prior to the IJ’s issuance of her decision, and the government could easily have responded in a reply memorandum. Rasiah cannot be faulted for complying with the IJ’s express instruction and presenting his argument in written form, rather than orally at the hearing.

. This claim of error applies with equal force to both the BIA's denial of Rasiah's initial appeal and its subsequent denial of his motion to reopen: in both decisions, the BIA deemed it unnecessary to address the merits of his pattern or practice claim in light of the IJ’s adverse credibility finding.

. The IJ further found that the petitioner had not established that he had suffered past persecution, and noted inconsistencies in his accounts of alleged past persecution. Id. at 176.

. In denying Rasiah’s motion to reopen, the BIA relied on Lemus v. Gonzales, 489 F.3d 399 (1st Cir.2007), in which we held that the petitioner’s motion to reopen could not succeed because, inter alia, she had not presented evidence rebutting the IJ’s prior adverse credibility finding. We affirmed the BIA's denial of petitioner’s motion to reopen, noting that "[t]o cinch matters, the newly proffered information does nothing to rehabilitate the petitioner’s failed credibility — and as said, the final administrative decision in this case hinged mainly on an adverse credibility determination.” Id. at 401. In Lemus, however, the discredited testimony as to petitioner’s past political activity was the very testimony underlying her asylum claim on the motion to reopen. Id. at 400-01. Here, the discredited testimony as to Rasiah's experiences of past persecution is entirely independent of his claim of future persecution based on a pattern or practice of persecution of Tamils.