**Boubacar BARRY, Petitioner,**

v.

**Alberto GONZALES, United States Attorney General, Respondent.**

No. 06–1995–ag.

United States Court of Appeals, Second Circuit.

March 15, 2007.

Thomas V. Massucci, Esq., New York, NY, for Plaintiff–Appellant.

Alexander D. Shoaibi, Madelyn E. Johnson, Assistant United States Attorneys, District of Columbia; Jeffrey A. Taylor, United States Attorney, District of Columbia, Washington, DC, for Defendant–Appellee.

Present: Hon. JOSEPH M. McLAUGHLIN, Hon. RICHARD C. WESLEY, Circuit Judges, Hon. WILLIAM K. SESSIONS III, District Judge.*

### SUMMARY ORDER

Familiarity by the parties is assumed as to the facts, the procedural context, and the specification of appellate issues. After reviewing the Immigration Judge's oral decision and the Board of Immigration Appeal's written decision, we affirm.

### Background

Petitioner Boubacar Barry ("Barry") is an ethnic Fulani and a member of the Rally of the People of Guinea ("RPG") party. He alleges that he was twice arrested by the Guinean government and does not want to return to Guinea as he fears that he will be again arrested, beaten, and mistreated because the same government still rules Guinea.

Barry entered this country with no valid immigrant visa or entry document. 8

---

\* The Honorable William K. Sessions III, of the United States District Court of Vermont, sit-      ting by designation.

U.S.C. § 1182(a)(7)(A)(i)(I) (section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act). He applied for asylum and withholding of removal on July 24, 2002, and again on March 6, 2003. On October 2, 2002, the then-Immigration and Naturalization Service ("INS") served him with a Notice to Appear for a removal proceeding in an Immigration Court in New York.

At Barry's removal hearing, he conceded removability because he lacked valid documents, but contended that because he entered the United States on May 21, 2002, his application for asylum was timely. 8 U.S.C. §§ 1158(a) and 1231(b)(3) (sections 208(a) and 241(b)(3) of the Immigration and Nationality Act) (applications for asylum must be filed within one year of the date of arrival into the United States).

On September 21, 2004, the Immigration Judge ("IJ") denied Barry's applications for asylum, withholding of removal, and CAT relief. Barry appealed the decision to the Board of Immigration Appeals ("BIA"), which denied his appeal on March 27, 2006. This petition for review of the BIA's final order of removal followed.[1] 8 U.S.C. § 1252(b)(2).

## Analysis

Barry argues that the IJ erred in finding him not credible. He contends that the BIA agreed he refuted the IJ's adverse credibility determination with the exception of a discrepancy between a statement given to an asylum officer and his testimony before the IJ. He asserts that the IJ and BIA erred in relying on the asylum officer's assessment memorandum and notes because he was not permitted to cross-examine the asylum officer, the assessment was "inherently unreliable," and even if there was a discrepancy, it was too minor to sustain an adverse credibility finding.

■ Barry claims that in affirming the IJ's decision, the BIA accepted only the IJ's determination that his statements to the IJ were inconsistent with previous statements he made to an asylum officer. Barry is wrong. The BIA specifically noted that

[e]ven if we agreed with the respondent's assertion that the [IJ] erred in finding the respondent not credible because his documents were not authenticated; his testimony was vague; he had previously traveled to the United States without applying for asylum; and he did not explain why his national identity card was not confiscated along with his passport, the [IJ] properly found that there were inconsistencies between the respondent's testimony at his individual hearing and his hearing before an asylum officer."

While the BIA did not consider the other reasons the IJ gave for finding Barry incredible, it certainly did not reject them.

■ Second, Barry argues that 8 U.S.C. § 1229a(b)(2)(B) guarantees him the right to cross-examine the asylum officer. Barry is again incorrect. That statute affords

1. Barry contests the finding that he was not credible, alleging the IJ and BIA erred in considering the report and interview notes of an asylum officer and the record did not support such a finding. He also contests the IJ's denial of his application for withholding of removal and CAT relief, alleging the decision was not supported by substantial evidence. He does not. however, appeal the BIA's affirmance of the IJ's decision holding that his application for asylum was pretermitted because he did not file it within one year of the date of his arrival into the United States. 8 U.S.C. § 1158(a)(2)(B).

aliens a "reasonable opportunity" to, inter alia, cross-examine witnesses presented by the Government. The asylum officer was not called as a witness against Barry.

■ Third, Barry argues that the IJ and BIA should not have considered the asylum officer's notes because they were unreliable.[2] He finds support for his view in *In re S–S–*, 21 I. & N. Dec. 121, 123 (BIA 1995). There, the BIA found it error to rely upon the notes of the petitioner's interview with an asylum officer. *Id.* Holding that "the record must contain a meaningful, clear, and reliable summary of the statements made by the applicant at the interview," the BIA noted that the asylum officer's notes, which were "randomly organized, cryptic to all but the note-taker, and partially illegible," provided an "inadequate basis for determining credibility." *Id.* at 123, 124.

In determining the factors necessary to "evaluate the reliability of both the record of the ... interview as a source of the alien's statements, and the statements themselves," we have recognized that "a record of the interview that merely summarizes or paraphrases the alien's statements is inherently less reliable than a verbatim account or transcript."[3] *Ramsameachire v. Ashcroft*, 357 F.3d 169, 180 (2d Cir.2004). Nevertheless, as long as the record itself is sufficiently "meaningful, clear, and reliable," it may be appropriate for the IJ to consider it. *In re S–S–, Applicant*, 21 I. & N. Dec. at 124.

We have reviewed the asylum officer's assessment and the notes appended to it. The assessment memorandum is typed and summarizes the interview and the asylum officer's findings, including his conclusion that Barry's description of his travel from Guinea to the United States was not credible. The notes are handwritten and appear to track a question/answer format.[4] Barry's descriptions of the length of detention after his June 2000 arrest differ: in the asylum officer interview, he claimed he was detained for two or three months; in the hearing before the IJ, he claimed he was detained for over six months. We find that it was not error for the IJ and BIA to consider these notes and determine that Barry was incredible because his subsequent explanations were inconsistent with his interview with the asylum officer.

■ Furthermore, the following facts also support the IJ's conclusions about

2. Federal Rule of Evidence 803(6) provides that records of regularly conducted activities are admissible, even without the testimony of the preparer, "unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness."

3. We noted three other factors that might make an interview less reliable: interviews where the interviewer's questions "are not designed to elicit the details of an asylum claim," or where the interviewer "fails to ask follow-up questions that would aid the alien in developing his or her account"; interviews where "the alien appears to have been reluctant to reveal information to INS officials because of prior interrogation sessions or other coercive experiences in his or her home country"; and, finally, interviews where "the alien's answers to the questions posed suggest that the alien did not understand English or the translations provided by the interpreter." *Id.* (citations and internal quotation marks omitted).

4. As an example, the portion at issue here reads: "June 2000 I was again arrested. How long were you detained? Long period. What is a 'long period'? About 2 or 3 months. When were you released? Was released in the 7 month. Of the year? Yes. Which is July? Yes. Were any legal charges presented against you then? They beat me during the arrest and they detained me. Any legal charges? Same as before. Did you go to Court? No...."

Barry's credibility: Barry's 1999 trip from Guinea to the United States, in which Barry was permitted to leave his home country and did not seek asylum here; Barry's testimony that he received his national identification card, which appeared to be dated 1995, in 2001;[5] and Barry's inconsistent testimony before the IJ regarding how his RPG membership card came to be sent to him in the United States. Therefore, we find that the IJ's determination that Barry, due to his "inconsistent testimony, failed to establish either past persecution or a well-founded fear of future persecution" was supported by substantial evidence. *See Lin v. U.S. Dep't of Justice*, 413 F.3d 188, 191–192 (2d Cir.2005) (citing *Zhang v. U.S. I.N.S.*, 386 F.3d 66, 67 (2d Cir.2004)).

Barry next argues that the IJ erred in denying his application for withholding of removal because, if Barry was found to be credible, substantial evidence does not support the denial of his application for withholding of removal. As we find that there was substantial evidence for the IJ and BIA's credibility determinations, we need not reach this second claim.

■ Finally, Barry made a rather limited argument that he is entitled to CAT relief because it is more likely than not that he will be tortured upon his return to Guinea. While Barry did not raise the CAT claim in his brief before the BIA, we are permitted to hear the appeal of the IJ's denial of this claim because the BIA addressed the CAT claim in its opinion. To be entitled to withholding of removal under CAT, Barry would have to prove that it is more likely than not that he would be tortured if removed to Guinea. 8 C.F.R. § 208.16(c)(2). "[W]e have held that a petition for CAT relief may fail because of an adverse credibility ruling rendered in the asylum context where the factual basis for the alien's CAT claim was the same as that rejected in his asylum petition." *Paul v. Gonzales*, 444 F.3d 148, 157 (2d Cir.2006); *Xue Hong Yang v. U.S. Dep't of Justice*, 426 F.3d 520 (2d Cir. 2005). Given that the facts Barry offered in support of his CAT petition were the same as those offered in support of his withholding of removal claim, the IJ's dismissal of the CAT petition must also be affirmed.

Accordingly, for the reasons set forth above, the petition is DISMISSED.

**5.** We note that Barry later testified that he had the national identification card on June 27, 2000, when his passport and other documents were confiscated.