**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3761
_____

HUSSAIN KHAN,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A072 418 476)
Immigration Judge:  Honorable Mirlande Tadal
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 18, 2011

Before:  AMBRO, GREENAWAY, JR., and GREENBERG, Circuit Judges

(Opinion filed: November 30, 2011)
_____

OPINION
_____

PER CURIAM

 Hussain Khan seeks review of an order of the Board of Immigration Appeals

("BIA").  For the following reasons, we will deny Khan's petition for review.

I.

Khan, a citizen of Pakistan, first entered the United States illegally in 1993 or 1994. He returned to Pakistan in 2003, and remained there for approximately five years. Khan entered the United States illegally for the second time on November 27, 2008, and was subsequently served with a notice to appear. He conceded removability but filed an application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT") on the basis that he feared persecution by the Taliban.

Khan is a clean-shaven, practicing Sunni Muslim. At a February 9, 2009 hearing before an Immigration Judge ("IJ"), he testified that he was threatened and beaten by members of the Taliban on two occasions when they came to his farm, located on the border of the Northwest Frontier Province ("NWFP"). During the first incident, which took place approximately a year prior to the hearing,[1] four to five men beat him and threatened to kill him if he did not grow his beard, pray correctly at regular times, and stop praising the United States. The men returned five or six months later and the same thing happened. Khan testified that he was not injured by the beatings and indicated that he did not seek medical treatment.[2] He feared that he would be targeted by the Taliban if he were to return to Pakistan because he liked the United States and had lived here.

The IJ found that Khan testified credibly, but rejected his asylum, withholding of removal, and CAT claims. The BIA affirmed on appeal, concluding that Khan failed to

---

[1] Khan could not recall the specific dates of the incidents.
[2] Khan's testimony was corroborated by affidavits of his neighbors, who witnessed the incidents.

establish past persecution or an objectively reasonable fear of future persecution based on his "admiration for the United States and personal habits." (R. 9.) The BIA also rejected Khan's withholding of removal and CAT claims. Khan petitioned this Court for review and we granted an unopposed motion for remand filed by the Government in light of factual errors contained in the BIA's decision.

On remand, Khan argued that he had established a well-founded fear of future persecution based on membership in a disfavored group – Americanized Muslims who do not observe Sharia (Islamic) law – and based on the Taliban's pattern and practice of persecuting such individuals. (R. 16-17, 19.) He also contended that his claim should be reevaluated in light of deteriorating conditions in Pakistan, and submitted new evidence in support of that contention. The BIA issued a modified decision correcting its factual error but abiding by its initial conclusion that Khan had not established eligibility for relief. The BIA treated Khan's newly submitted evidence as a motion for remand, which it denied. Khan subsequently filed a timely petition for review.

## II.

We have jurisdiction to review both the BIA's modified decision denying relief and its denial of Khan's motion for remand. See 8 U.S.C. § 1252; see also Sevoian v. Ashcroft, 290 F.3d 166, 169 (3d Cir. 2002). "We review the facts upon which the BIA's decision rests to ensure that they are supported by substantial evidence from the record considered as a whole, and we will reverse based on a factual error only if any reasonable fact-finder would be compelled to conclude otherwise." Huang v. Att'y Gen., 620 F.3d

3

372, 379 (3d Cir. 2010) (citation and quotations omitted). However, we exercise de novo review over the BIA's legal decisions. Id. We review the BIA's denial of a motion to remand, which we treat as a motion to reopen, for abuse of discretion, and will not reverse unless the BIA's decision is arbitrary, irrational, or contrary to law. See McAllister v. Att'y Gen., 444 F.3d 178, 185 (3d Cir. 2006).

### A.   Khan's Claims for Relief

To succeed on his asylum claim, Khan must establish "that he has suffered from past persecution or has a well-founded fear of future persecution on account of one of the five statutory bases: race; religion; nationality; membership in a particular social group; or political opinion." Wang v. Gonzales, 405 F.3d 134, 142 (3d Cir. 2005). The BIA concluded that Khan failed to establish past persecution because he was "not appreciably harmed" during the incidents with the Taliban and because the Taliban's threats "were oblique and not imminent." (R. 9.) We have recognized that concrete, highly imminent threats can constitute persecution when the petitioner also suffers harm or when the threats escalate with each incident. See Chavarria v. Gonzalez, 446 F.3d 508, 520 (3d Cir. 2006); see also Gomez-Zuluaga v. Att'y Gen., 527 F.3d 330, 343 (3d Cir. 2008). But the two incidents Khan experienced were of a similar character and separated by several months. More importantly, Khan was not harmed on either occasion. Accordingly, the record does not compel the conclusion that he suffered past persecution. See Jarbough v. Att'y Gen., 483 F.3d 184, 191 (3d Cir. 2007) (no past persecution when petitioner was detained by agents of the Syrian government on two occasions, who "cursed, threatened,

4

kicked, shoved, and pushed him").

The BIA's conclusion that Khan failed to establish an objectively reasonable fear of future persecution is also supported by substantial evidence.[3] To establish such a fear, "the alien [must] show that a reasonable person in his position would fear persecution, either because he would be individually singled out for persecution or because there is a pattern or practice in his home country of persecution against a group of which he is a member." Huang, 620 F.3d at 381 (quotations omitted). Khan contends that he has established a well-founded fear that he would be persecuted by the Taliban either on an individual basis or due to a "'pattern or practice' of persecution of non-observing Sharia law Muslims."[4] (Pet'r's Br. 28-29.) He relies on his testimony and the U.S. State Department's 2007 Country Report for Pakistan, the only documentary evidence that he submitted in support of his claim.

We agree with the BIA that nothing in the 2007 Country Report establishes that Khan would be "subject to a particularized threat of harm" upon return to Pakistan. (R. 9.) The report establishes that Taliban militants were active in the NWFP and that "they killed security forces, government officials, tribal elders, religious leaders, and persons they accused as spies" and "bombed girls' schools, barber shops, hotels, and video

---

[3] Khan's subjective fear is not in question since the IJ and BIA accepted his testimony as credible.

[4] Khan also argues that the BIA erred in failing to consider his claim that he is a member of a disfavored group, namely, Americanized Muslims. As we have "reject[ed] the establishment of a 'disfavored group' category," Lie v. Ashcroft, 396 F.3d 530, 538 n.4 (3d Cir. 2005), we discern no error.

5

shops." (R. 380.) But it does not reflect that Taliban were targeting either individuals who held pro-American views or Sunni Muslims like Khan who failed to practice Sharia law. Nor does it in any way establish that the Taliban engaged in a pattern and practice of persecuting such individuals.[5] See Wong, 539 F.3d at 232-33 ("As part of a pattern or practice claim, an applicant must 'establish[ ] his or her own inclusion in, and identification with, such group of [similarly situated] persons such that his or her fear of persecution upon return is reasonable.'") (quoting 8 C.F.R. § 208.13(b)) (alterations in original).

Moreover, the BIA properly observed that the reasonableness of Khan's fear is diminished by the fact that he remained in Pakistan for nearly a year after the first incident and given the absence of evidence that the Taliban has any ongoing interest in him in particular. The BIA also reasonably questioned Khan's fear in light of the fact that he was not harmed during the five years that he lived in Pakistan between 2003 and 2008, "despite his having adopted American ways . . . ." (R. 5.) Khan challenges that observation, asserting that the Taliban became more active at the end of 2007, which

---

[5] The IJ did not make a finding regarding any such pattern or practice. This is unsurprising, as no such claim was presented to her. The BIA raised the issue sua sponte in its first opinion, rejecting the theory by citing Wong v. Attorney General, 539 F.3d 225, 232-33 (3d Cir. 2008). On remand, Khan mentioned the theory in a cursory fashion (R. 19), but he did not develop the argument in any detail. We note that Khan does not argue that, under these circumstances, the Board erred by failing to remand to the IJ to make relevant findings of facts about the existence of any pattern or practice of discrimination. In any event, any error in this regard would be harmless. See Yuan v. Att'y Gen., --- F.3d ---, 2011 WL 1519200, at *5 (3d Cir. Apr. 22, 2011).

explains why he was not approached until early 2008. But the government correctly points out that there is no information in the record to substantiate Khan's assertion. In sum, although Khan has demonstrated considerable unrest and turbulent conditions in Pakistan, the record does not compel the conclusion that he will be persecuted by the Taliban due to his appreciation of the United States or his failure to comply with Sharia law.[6] See Konan v. Att'y Gen., 432 F.3d 497, 506 (3d Cir. 2005) (observing that "general unrest and violence will not support an asylum claim standing alone").

B.    Motion to Reopen

Khan also contends that the BIA erred in denying his motion to reopen. When a motion to reopen is based on changed country conditions, the movant must present evidence that is "material and was not available and could not have been discovered or presented at the previous hearing," which is based on "changed circumstances arising in the country of nationality." 8 C.F.R. § 1003.2(c)(3)(ii). Furthermore, "[a] motion to reopen must establish *prima facie* eligibility for asylum," i.e., that the movant is reasonably likely to succeed on the merits of his claim. Guo v. Ashcroft, 386 F.3d 556, 563 (3d Cir. 2004).

Khan submitted numerous materials to the BIA on remand, some of which

---

[6] As Khan failed to establish eligibility for asylum, the BIA appropriately denied relief under the more stringent standard for withholding of removal. See Ghebrehiwot v. Att'y Gen., 467 F.3d 344, 351 (3d Cir. 2006). Furthermore, since Khan's brief failed to make any specific arguments regarding his CAT claim, we agree with the government that the claim is waived. See Li v. Att'y Gen., 633 F.3d 136, 140 n.3 (3d Cir. 2011).

predated his February 2009 hearing, but most of which were not available until afterward, such as the State Department's 2008 International Religious Freedom Report for Pakistan, the State Department's 2008 and 2009 Human Rights Reports for Pakistan, the Annual Report of the United States Commission on International Religious Freedom dated May 2009, and numerous articles detailing abuses by the Taliban in 2009. The BIA denied Khan's motion because (1) certain articles that he submitted did not constitute new evidence; (2) the more recent materials were essentially cumulative of information contained in older reports; and (3) the new information did not "differ in any material respect" from the 2007 Country Report upon which the BIA's original decision was based. (R. 5.)

Khan contends that the BIA erred in failing to consider the "drastically worsened country conditions in 2009." (Pet'r's Br. 10.) Specifically, he cites articles documenting Taliban violence against women, religious minorities, and individuals who listened to music and failed to wear the traditional dress or grow their beards. He also relies on the fact that the government reached an agreement with the Taliban that would permit implementation of Sharia law in the NWFP.[7]

---

[7] Khan also points out that the president of Pakistan approved Sharia law in 2009. We do not understand how the government's approval of Sharia law substantially impacts Khan's claim, which is based on his fear of persecution by the Taliban. Furthermore, we will not consider the extra-record materials Khan relies on to establish that conditions deteriorated further in 2010. See Berishaj v. Ashcroft, 378 F.3d 314, 330 (3d Cir. 2004). Instead, we will limit our review to the documentation provided in support of his motion to reopen. See 8 U.S.C. § 1252(b)(4)(A).

First, the BIA is correct that certain materials that Khan submitted do not

constitute new evidence. In particular, a May 2008 article reflecting that the Taliban

targeted barber shops and warned men to stop shaving within the next two months or face

"harsh punishment" was available before the IJ heard the case.[8] (R. 79.) The BIA is also

correct that some of the information – for example, the fact that the Taliban was targeting

barber shops and girls schools in the NWFP – reflects the same type of information

available in 2007. And although we might agree with Khan that the new evidence

establishes that the Taliban gained a stronger foothold in the NWFP and increased violent

attacks in 2009, particularly against religious minorities and women, (see R. 34, 37, 77,

92, 102, 114-16, 143, 149-51, 164,) Khan is not a religious minority or a woman, nor is

his asylum claim predicated on fear of persecution on those grounds. Thus, the BIA

rationally concluded that the new evidence does not differ in a material manner from the

older evidence vis-à-vis Khan's asylum claim.[9] Accordingly, the BIA did not abuse its

---

[8] The BIA noted that, even if it were to consider Khan's new submissions, the May 2008 article undermined the reasonableness of Khan's fear considering that he remained in Pakistan until November 2008. Khan contends that the BIA's statement in that regard conflicts with its conclusion that Khan would not be subject to a particularized threat. We do not agree. We understand the BIA to be saying simply that, if conditions in Pakistan were as bad as Khan suggests, it would not make sense that he remained there for several months in the wake of general threats from the Taliban yet met no harm despite remaining clean shaven. Unlike Khan, we do not interpret the BIA's decision to convey that Khan had a reason to fear persecution based on the information in the article alone.

[9] In this respect, Khan's case is distinguishable from those cases in which the petitioner is a religious minority seeking asylum in light of increased violence against religious minorities in Pakistan. See Paul v. Gonzales, 444 F.3d 148, 156 (2d Cir. 2006).

discretion in declining to reopen the record.

For the foregoing reasons, we will deny Khan's petition for review.