**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3236
_____

HENRY MAURICIO ABREGO-CENTENO,
                                        Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                                        Respondent

_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
(Agency No. A088-233-829)
Immigration Judge: Mirlande Tadal

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 2, 2014

Before:   HARDIMAN, NYGAARD and ROTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed:  January 17, 2014)
_____

OPINION
_____


PER CURIAM

        Henry Mauricio Abrego-Centeno ("Abrego") petitions for review of the Board of

Immigration Appeals' final order of removal.  For the reasons that follow, we will deny

the petition for review.

Abrego, a native and citizen of El Salvador, entered the United States without inspection in October, 2007. He came to the attention of immigration authorities following an arrest for disorderly conduct and related charges in Elizabeth, New Jersey. On August 23, 2010, the Department of Homeland Security initiated removal proceedings against him through service of a Notice to Appear, which charged that he is removable pursuant to Immigration & Nationality Act ("INA") § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled. Abrego does not dispute that he is removable on this basis.

After removal proceedings were initiated, Abrego filed an application for asylum, withholding of removal, and protection under the Convention Against Torture in Immigration Court, claiming a fear that he would be harmed by members of the gang MS-18 in El Salvador because he had previously rejected their efforts to recruit him. The application was filed on November 1, 2010, and Abrego submitted certain exhibits in support of it, including a statement of his own, asserting that he had been assaulted by MS-18 members in June, 2007 because he refused to join the gang; a statement from his mother, in which she asserted that, when gang members would see Abrego on the street they would take his salary money from him and at other times they would beat him up; a statement from his brother, Jose Antonio, stating that he had been shot numerous times by gang members on March 17, 2007, and Jose Antonio's medical records, which showed that he received treatment for multiple gunshot wounds on March 17, 2007 and was severely injured, A.R. 144. Abrego also submitted news articles discussing the gang's violent and lawless activities, background information including the 2009 State

2

Department Country Report on Human Rights Practices, and photographs of his brother's gunshot wounds.

Abrego testified in support of his applications at a merits hearing on December 22, 2010. He testified that he left El Salvador because he had problems there with the gangs. On direct examination, Abrego testified twice that he was assaulted on March 17, 2007 for his refusal to join the gang, and threatened with death, A.R. 100, 106, even though his application, including his brother's medical records, made it reasonably clear that it was his brother and not Abrego who was harmed on March 17, 2007. On cross-examination, government counsel pounced on the inconsistency, first asking Abrego how he was able to remember the exact date that he was beaten by gang members. Abrego replied, "You never forget what they do to you." Id. at 109. Abrego then was asked about and addressed the shooting of his brother, testifying that his brother was shot eight times in the arm and abdomen and that the shooting took place one month after he, Abrego, was beaten on March 17, 2007. See id. at 110. Government counsel confronted Abrego with his brother's statement that his shooting took place on March 17, 2007. Upon being confronted with his own evidence, Abrego changed his testimony and stated that he was beaten by the gang in June or July, 2007, and not on March 17, 2007, see id. When confronted further, Abrego again changed his testimony, stating: "No. No, they beat me up first, and then they beat him up. They beat him up in June." Id. at 111. On redirect, Abrego testified that his brother was shot on March 17, 2007, and he was beaten "[b]efore he was shot." Id. at 112.

3

Following the hearing the Immigration Judge denied statutory withholding of removal.[1] The IJ found that Abrego's persecution claim relating to the gang in El Salvador was not credible, because Abrego gave conflicting testimony at his hearing about whether he was beaten, or his brother was shot, on March 17, 2007. In addition, Abrego's testimony was not consistent with his mother's statement in that he testified that he had been beaten up only once, whereas his mother referred to his having been robbed or beaten on more than one occasion. The IJ also concluded that Abrego had not established that he was a member of a "particular social group" entitled to protection under the INA. The IJ denied Abrego's CAT application on the basis of the Country Report, which the IJ stated did not support an inference that the government of El Salvador would acquiesce in torture by gang members; the IJ concluded that the report showed that El Salvador is making progress in controlling gang activity. The IJ ordered Abrego removed to El Salvador.

Abrego appealed to the Board of Immigration Appeals. In his brief, he contended, in pertinent part, that he had gotten confused about the date that he was attacked and the date that his brother was shot. On June 20, 2013, the Board dismissed the appeal, declining to reach any issue other than the IJ's adverse credibility determination. With regard to that determination, the Board reasoned that the IJ did not clearly err because there were noteworthy inconsistencies in Abrego's application and testimony with respect to the number of times he was beaten, the date on which he was beaten, and the date on

---

[1] Although Abrego filed an asylum application, he conceded that it was untimely under the INA, 8 U.S.C. § 1158(a)(2)(B), and thus the IJ considered only his withholding of removal and CAT protection applications.

which his brother was shot. The Board found his explanation that he was confused inadequate, and, in any event, it did not account for his mother's statement that he had been robbed or attacked on more than one occasion. Because Abrego did not testify credibly, he did not meet his burden of proof, and thus it was unnecessary to address whether he had established his membership in a protected "particular social group."

Abrego petitions for review of the Board's decision. We have jurisdiction under 8 U.S.C. § 1252(a)(1), (b)(1). When the Board issues a separate opinion, we review the Board's decision and look to the IJ's ruling only insofar as the Board deferred to it. Chavarria v. Gonzalez, 446 F.3d 508, 515 (3d Cir. 2006).

We will deny the petition for review. Under INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A), withholding of removal is not discretionary: "The Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group or political opinion." The statute requires the alien to show by a clear probability that his life or freedom would be threatened on account of a protected ground in the proposed country of removal. Immigration & Naturalization Serv. v. Stevic, 467 U.S. 407 (1984). See also Immigration & Naturalization Serv. v. Cardoza-Fonseca, 480 U.S. 421, 430 (1987) ("would be threatened" standard has no subjective component). An applicant for withholding of removal bears the burden of demonstrating his eligibility for relief through credible testimony. 8 U.S.C. § 1231(b)(3)(C); § 1229a(c)(4)(A)-(B).

5

The agency's factual determinations are upheld if they are supported by reasonable, substantial, and probative evidence on the record considered as a whole. Immigration & Naturalization Serv. v. Elias-Zacarias, 502 U.S. 478, 481 (1992). Under this deferential standard, the petitioner must establish that the evidence does not just support a contrary conclusion but compels it. See id. at 481 n.1; Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002). Adverse credibility determinations are reviewed under the substantial evidence standard. See Xie v. Ashcroft, 359 F.3d 239, 243 (3d Cir. 2004).

The INA provides that:

> Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

8 U.S.C. § 1158(b)(1)(B)(iii).

Thus, when asserting a withholding of removal claim, a petitioner must credibly show both that he is a member of a particular social group as defined by the Act and that it is more likely than not that he will be persecuted on account of his membership in that group. 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 1208.16(b). Here, substantial evidence supports the agency's conclusion that Abrego failed to meet his burden of proof because he did not testify credibly about the central issue in his case, even if it is assumed that he

6

is a member of a particular social group as defined by the INA. Substantial evidence supports the adverse credibility determination made in Abrego's case because it was based on specific inconsistencies in Abrego's testimony and evidence that concerned the very basis of his claim, namely his allegations that he was beaten and his brother was shot and nearly killed in El Salvador by MS-18 gang members. Abrego failed to present a coherent claim with respect to what happened to him and his brother in El Salvador.

An applicant cannot rely solely on the persecution of a family member to qualify for relief, see Cham v. Att'y Gen. of U.S., 445 F.3d 683, 693 (3d Cir. 2006), but evidence of a gang-related assassination attempt on Abrego's brother was relevant to his claim because he and his brother share the same characteristics, see id. Moreover, Abrego's claim of persecution, which was based on a minor assault, would have been weak without the evidence that his brother was severely harmed by the gang. Cf. Voci v. Gonzales, 409 F.3d 607, 615 (3d Cir. 2005) (single beating that does not result in serious physical injury does not compel reversal of the Board's decision that alien did not suffer persecution). Credible testimony about what happened to his brother, and when it happened, was thus crucial to his claim of persecution.

Abrego's paper application and supporting exhibits presented a coherent claim, through Abrego's statement, and his brother's statement and medical records, that his brother was shot multiple times on March 17, 2007 and left with severe long-term injuries, and that Abrego was assaulted by gang members, but not on that same date. Abrego then gave testimony at his merits hearing that directly contradicted this simple, straightforward case, and there is no plausible reason for Abrego to have insisted twice

7

on direct examination that *he* was the one who was assaulted on March 17, 2007, or to have testified that his brother was shot one month later. Nothing in Abrego's brief on appeal rehabilitates his credibility with respect to this critical issue. His credibility was severely undermined on cross-examination when he testified that he was able to remember March 17, 2007 as the exact date that he was beaten because "You never forget what they do to you," id. at 109.

Accordingly, the agency's adverse credibility determination will be upheld. The agency further concluded that Abrego did not meet his burden of establishing that it is more likely than not that he will be tortured upon his return to El Salvador by forces the government is unable or unwilling to control. 8 C.F.R. § 1208.16(c)(2). Where a CAT claim is based on the same evidence found to be incredible, and the evidence does not otherwise compel the conclusion that it is more likely than not that the applicant would be tortured by, or with the acquiescence of, the government in the country of removal, as is the case here, the applicant cannot establish eligibility for CAT protection. See Paul v. Gonzales, 444 F.3d 148, 157 (2d Cir. 2006). Here, the factual basis for Abrego's statutory withholding of removal and CAT claims are the same, and the record does not compel a conclusion contrary to that of the agency on the torture claim.

For the foregoing reasons, we will deny the petition for review.