Ashraf v. Barr

BIA
Christensen, IJ
A206 573 964

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of July, two thousand twenty.

PRESENT:
        JOHN M. WALKER, JR.,
        DEBRA ANN LIVINGSTON,
        RICHARD J. SULLIVAN,
           *Circuit Judges.*

_____

BILAL ASHRAF,
        *Petitioner,*

        v.                     18-852
                                 NAC

WILLIAM P. BARR, UNITED STATES ATTORNEY GENERAL,
        *Respondent.*

_____

FOR PETITIONER:        Richard W. Chen, New York, NY.

FOR RESPONDENT:        Joseph H. Hunt, Assistant Attorney General; Mary Jane Candaux, Assistant Director; Matthew A. Connelly, Trial Attorney, Office

of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Bilal Ashraf, a native and citizen of Pakistan, seeks review of a March 1, 2018 decision of the BIA affirming a May 2, 2017 decision of an Immigration Judge ("IJ") denying Ashraf's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Ashraf,* No. A 206 573 964 (B.I.A. Mar. 1, 2018), *aff'g* No. A 206 573 964 (Immig. Ct. N.Y. City May 2, 2017). We assume the parties' familiarity with the underlying facts and procedural history in this case.

Because the BIA affirmed the IJ's adverse credibility ruling, we have reviewed both the BIA's and IJ's decisions. *See Yun-Zui Guan v. Gonzales*, 432 F.3d 391, 394 (2d Cir. 2005). We review the agency's findings of fact under the substantial evidence standard. *See* 8 U.S.C. § 1252(b)(4); *Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d Cir. 2018). Under this standard, "[w]e treat factual findings as

'conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)).

The agency may, "[c]onsidering the totality of the circumstances . . . base a credibility determination on the demeanor, candor, or responsiveness of the applicant," the plausibility of his account, and inconsistencies in his statements or between his statements and other evidence, without regard to whether they go "to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii). We "defer . . . to an IJ's credibility determination unless . . . it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 167 (2d Cir. 2008); *accord Hong Fei Gao*, 891 F.3d at 76. Substantial evidence supports the agency's determination that Ashraf was not credible.

First, the agency reasonably relied on internal inconsistencies in Ashraf's testimony concerning the details of the three incidents in which he alleged that he was attacked (in March, May, and June 2013). *See* 8 U.S.C. § 1158(b)(1)(B)(iii). For example, Ashraf testified that he

3

completed his final university exam prior to the March attack, but, when confronted with records suggesting that the exams were later, he testified that he took additional exams shortly afterwards. This inconsistency implicated the timeline of the attacks and the extent of his injuries following the first attack.

Second, the agency reasonably relied on inconsistencies and omissions in Ashraf's medical records. *See* 8 U.S.C. § 1158(b)(1)(B)(iii); *Hong Fei Gao*, 891 F.3d at 81 (holding that "an omission by a third party may form a basis for an adverse credibility determination"). Ashraf testified that he received treatment from Ghani Memorial Clinic after all three attacks and that he received the most extensive treatment, including a two-day clinic stay, following the May attack. But the first letter he obtained from the clinic mentioned only the March and June incidents. *See id.* at 78 ("[T]he probative value of a witness's . . . silence on particular facts depends on whether those facts are ones the witness would reasonably have been expected to disclose."). Although Ashraf obtained a second letter addressing the omitted attack after the discrepancy was noted during his

4

asylum interview, the agency was not required to credit his explanation that the clinic failed to thoroughly search its records prior to completing the first letter. *See Majidi v. Gonzales*, 430 F.3d 77, 80 (2d Cir. 2005) ("A petitioner must do more than offer a plausible explanation for his inconsistent statements to secure relief; he must demonstrate that a reasonable fact-finder would be *compelled* to credit his testimony." (internal quotation marks omitted)).

These letters also omitted the injuries Ashraf allegedly sustained to his leg during the June attack. Ashraf testified that he was beaten on the leg with a sharp metal object on the end of a stick, and that these were the most serious injuries he suffered from that alleged attack. Ashraf argues that the clinic letter reported the resulting leg bruises in asserting that he "presented with significant bruising and some lacerations at his back & arms." This is a strained reading of the letter, which would be reasonably expected to include the location of the most serious injuries in addition to the location of less-serious injuries. *See Hong Fei Gao*, 891 F.3d at 78.

Third, the IJ questioned the authenticity of the Ghani

5

Memorial Clinic letters because the word "Memorial" was spelled inconsistently on the letterhead. Ashraf argues that it is not unusual to use stationery with printer errors. But an IJ is entitled to "considerable flexibility in determining the authenticity of . . . documents from the totality of the evidence." *Shunfu Li v. Mukasey*, 529 F.3d 141, 149 (2d Cir. 2008). Here, especially in light of the significant omissions noted above as well as additional inconsistencies regarding whether the May attack rendered Ashraf unconscious and what leg was injured in the June attack, the totality of the evidence supported the IJ's evaluation of these records. *See id.*

Finally, Ashraf argues that the agency failed to consider or ascribe appropriate weight to his remaining corroborating documents, and that the BIA decision improperly characterized letters in the record as "unsworn." Although the record reflects that the letters from Muhammad Rasheed, Hina Bilal, Qaiser Raza Chishti, and Tariq Gill were in fact "sworn," notarized, and subject to "the penalties of perjury," the agency did not rely on the "unsworn" character of these letters in assigning weight; instead, it properly relied on

6

the unavailability of the authors for cross-examination, and Ashraf's wife's interest in the outcome. *See In re H-L-H- & Z-Y-Z-*, 25 I. & N. Dec. 209, 215 (B.I.A. 2010) (finding that letters from the applicant's friends and family did not provide substantial support for the applicant's claims because they were from interested witnesses not subject to cross-examination), *overruled on other grounds by Hui Lin Huang v. Holder*, 677 F.3d 130, 133–38 (2d Cir. 2012); *see also Y.C. v. Holder*, 741 F.3d 324, 334 (2d Cir. 2013) (deferring to agency's decision to give little weight to letter from applicant's spouse in China). The remaining documents do not rehabilitate Ashraf's testimony, as they do not corroborate the alleged instances of persecution or explain the discrepancies elsewhere in the record. And the IJ did not err in finding that this lack of reliable corroboration further undermined Ashraf's credibility. *See Biao Yang v. Gonzales*, 496 F.3d 268, 273 (2d Cir. 2007) (holding an asylum applicant's failure to corroborate his testimony may bear on his credibility "because the absence of corroboration in general makes an applicant unable to rehabilitate testimony that has already been called into

7

question").

In sum, given the multiple inconsistencies and omissions and the lack of reliable corroboration, the adverse credibility determination is supported by substantial evidence. *See* 8 U.S.C. § 1158(b)(1)(B)(iii); *Xiu Xia Lin*, 534 F.3d at 165–67. That determination is dispositive of asylum, withholding of removal, and CAT relief because all three claims are based on the same factual predicate. *See Paul v. Gonzales*, 444 F.3d 148, 156–57 (2d Cir. 2006).

For the foregoing reasons, the petition for review is DENIED. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

8