**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-3368
_____

K.S.,
               Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA
_____

On Petition for Review of a Decision of the
Board of Immigration Appeals
(BIA 1:A099-214-065)
Immigration Judge: Audra R. Behne
_____

Argued
September 21, 2021

Before:   JORDAN, PORTER, and RENDELL, *Circuit Judges*

(Filed: January 5, 2022)
_____

Joseph A. Brophy [ARGUED]
Brophy & Lenahan
18 Campus Boulevard – Suite 100
Newtown Square, PA 19073
       *Counsel for Petitioner*

Margot L. Carter [ARGUED]
United States Department of Justice
1100 L Street, N.W.
Washington, DC 20530

Colin J. Tucker
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

  *Counsel for Respondents*

_____

OPINION*
_____

JORDAN, *Circuit Judge*.

K.S. seeks review of a decision of the Board of Immigration Appeals ("BIA") affirming the denial of his application for asylum and withholding of removal. We will grant his petition.

## I. BACKGROUND

K.S. is a native and citizen of Jamaica. In 2003, he was admitted to the United States and has been a lawful permanent resident since 2005. Pursuant to 8 U.S.C. § 1227 (a)(2)(B)(i), the Department of Homeland Security ("DHS") sought to remove him in March 2019 for convictions involving controlled-substances violations. The Immigration Judge ("IJ") sustained the charge of removability . K.S. applied for asylum, withholding

---

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

of removal, and relief under the Convention Against Torture ("CAT").  In his written application, he claimed that his family faced threats of harm in Jamaica because of his mother's political affiliations.  He did not claim to face persecution on any other basis.

The IJ held a merits hearing, and K.S. then claimed for the first time that he would be persecuted in Jamaica because of his sexual orientation.  His counsel informed the IJ that K.S. had "recently admitted … that he is bisexual and he does cross-dress."  (AR at 102.)  On direct examination, in addition to testifying about his mother's political affiliation, K.S. testified about his sexual orientation, saying that he was bisexual and that he had been having sexual relations with men since about 2009.

On cross-examination, K.S.'s testimony produced some inconsistencies and some new, salient assertions that had been omitted from his written application and direct examination.  With regard to his sexual orientation in particular, he said that his first sexual relations with a man occurred in 2005, and that he first realized that he was attracted to men after an incident in 1995, while he still lived in Jamaica and a man made advances to him.  K.S. explained that he had not mentioned the 1995 experience on direct examination because he "wasn't thinking" and he "wasn't focusing on that."  (AR at 161.)  He also claimed that he did not mention his sexual orientation on his written application because he "didn't want to tell [his] family" and he was "really scared to come out with it."  (AR at 169-70.)

K.S. also offered additional evidence of his sexual identity.  He submitted a police affidavit that described a 2017 traffic stop.  In that affidavit, the Pennsylvania State Trooper who stopped K.S. stated that K.S. was wearing women's clothing at the time and

3

admitted to keeping his cross-dressing secret. K.S.'s wife, J.S., also testified at the merits hearing. She testified that she only found out about K.S.'s cross-dressing and sexual orientation when she read the police report from that traffic stop, after which K.S. confessed to her that he had been having sexual relations with men.

On the day of the hearing, K.S.'s lawyer introduced two pieces of evidence regarding the mistreatment of bisexual individuals in Jamaica: first, a Huffington Post article about the murder of a teenager caught cross-dressing in Jamaica; and second, an Amnesty International report about country conditions in Jamaica. The IJ admitted both pieces of evidence together as "Exhibit 6."

Ultimately, the IJ denied K.S.'s applications for asylum, withholding of removal, and protection under the CAT. She found that his testimony was not credible, based on his vague direct testimony and his failure to provide a clear explanation for why certain significant events were only disclosed on cross-examination, and on other inconsistencies and implausibilities in his testimony. Because she decided that K.S.'s claim that he was bisexual was not credible, the IJ found that he "[had] not established that he is a member of this particular social group." (AR at 59.) In reaching that conclusion, the IJ specifically noted that she was "taking into consideration the wife's testimony and the court criminal document [i.e., the 2017 police affidavit]." (AR at 59.)

4

K.S. appealed the IJ's denial of his application for asylum and withholding of removal.[1] The BIA, in response, affirmed the IJ's decision and dismissed the appeal. (AR at 3-4.) It explained that it "adopt[ed] and affirm[ed] the [IJ's] adverse credibility finding for the reasons stated therein." (AR at 3 (citing *Matter of Burbano*, 20 I. & N. Dec. 872, 874 (BIA 1994)).) It further stated that, because of the adverse credibility determination, it did not need to reach the respondent's remaining contentions on appeal. According to the BIA, "[w]ithout credible testimony[,] the respondent cannot meet his burden of proving that he merits asylum and withholding of removal." (AR at 4.)

K.S. timely petitioned for review. He argues before us that the BIA erred by basing its decision exclusively on the adverse credibility determination and disregarding additional evidence of his bisexuality. He also claims that his due process rights were violated because Exhibit 6 was not included in the administrative record provided to the BIA.

## II.    DISCUSSION[2]

---

[1] K.S. did not challenge the IJ's decision that he had not established harm rising to the level of torture under the CAT.

[2] The BIA had jurisdiction pursuant to 8 U.S.C. § 1103 and 8 C.F.R. § 1003.1(b) over K.S.'s appeal of the IJ's ruling. We have jurisdiction pursuant to 8 U.S.C. § 1252. Because the government seeks to remove K.S. for a controlled-substance conviction, our jurisdiction is limited to reviewing constitutional claims and other questions of law. 8 U.S.C. § 1252(a)(2)(C), (D). "An adverse credibility determination is a finding of fact[,]" *Sunuwar v. Att'y Gen.*, 989 F.3d 239, 247 (3d Cir. 2021), so we do not review either the IJ's finding that K.S.'s testimony was not credible or the BIA's acceptance of that finding.

The BIA accepted the IJ's determination that K.S.'s testimony was not credible. Based solely on that, the BIA then dismissed K.S.'s appeal, without considering any other evidence or arguments presented by K.S. According to the BIA, the adverse credibility determination disposed of the matter because, "without credible testimony[, K.S.] cannot meet his burden of proving that he merits asylum and withholding of removal." (AR at 4.) That legal statement was erroneous, at least in part, and the BIA's decision to dismiss the appeal without considering any other evidence was thus also in error.[3]

An alien is entitled to withholding of removal to a country if "the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C.

---

[3] Our dissenting colleague says we are unfairly focusing on one sentence from the BIA's opinion, a sentence "torn from the rest of the agency's and the IJ's opinions," "shorn of context," and "construe[d] … uncharitably." (Dissent at 2, 4.) To the contrary, though, we have quoted that particular sentence because it is a fair and accurate summary of the BIA's entire opinion. In its own words, the BIA "adopt[ed] and affirm[ed] the Immigration Judge's adverse credibility finding for the reasons stated therein (IJ at 3-8)." (A.R. at 3.) The BIA discussed only the IJ's adverse credibility determination. It cited only to the pages of the IJ's opinion that dealt with K.S.'s testimony and rendered the adverse credibility determination. The BIA's analysis does not indicate that the agency even considered, much less adopted, any other aspect of the IJ's decision – such as the IJ's weighing of independent evidence. And the sentence we have quoted, which is placed in the BIA's opinion as a summary, is immediately followed by a case citation to *Matter of Mogharrabi*, 19 I&N Dec. 439, 445 (BIA 1987), a decision emphasizing that an alien's own testimony may, in some cases, be sufficient evidence to support his claim. *Id*. In short, the BIA's opinion is all about the credibility of K.S. and nothing more. That is the full context in which our review must be and is grounded. *See Calla-Collado v. Att'y Gen.*, 663 F.3d 680, 683 (3d Cir. 2011) (explaining that "we will look to the IJ's analysis to the extent that the BIA deferred to or adopted it," but otherwise "we review only the BIA's decision").

6

§ 1231(b)(3)(A). The "would be threatened" standard "requires the alien to establish by objective evidence that it is more likely than not that he or she will be subject to persecution upon deportation." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 430 (1987). Importantly, that standard "has no subjective component." *Id.*; *see also Aguilar-Escoto v. Sessions*, 874 F.3d 334, 337 (1st Cir. 2017) ("Withholding claims lack a subjective component and are [thus] concerned only with objective evidence of future persecution." (alteration in original) (citation omitted)).

Because a claim for withholding of removal depends only on objective evidence, an adverse credibility determination is not automatically fatal to a claim for withholding of removal. *Aguilar-Escoto*, 874 F.3d at 338 ("[B]ecause withholding of removal requires no … genuine belief [of future persecution], a withholding claim may, in appropriate instances, be sustained despite an adverse credibility finding." (citation omitted)). Of course, an adverse credibility determination may ultimately be fatal to a withholding claim. An IJ may weigh all the evidence and, with a negative credibility finding in the balance, determine that future life-threatening or freedom-threatening events based on a protected ground are not likely to occur. There may also be cases "where a withholding claim is based on the very fact, or set of facts, that the IJ found not to be credible." *Paul v. Gonzales*, 444 F.3d 148, 156 (2d Cir. 2006). If the alien does not then present any evidence of a future threat to life or freedom other than his own testimony, an adverse credibility determination will preclude a claim of withholding. *Tarrawally v. Ashcroft*, 338 F.3d 180, 186 (3d Cir. 2003); *Paul*, 444 F.3d at 156. But when the alien presents "independent evidence [that] could also serve as a basis for [the]

7

application for withholding of removal," that evidence must be considered as part of the objective inquiry into that claim. *Camara v. Ashcroft*, 378 F.3d 361, 370-71 (4th Cir. 2004).

Here, K.S. presented independent evidence in support of his application for withholding of removal, including J.S.'s testimony and the 2017 police affidavit. Thus, this is not a case where an adverse credibility determination alone would necessarily doom a claim for withholding of removal. The IJ expressly noted that she had considered the 2017 police affidavit and J.S.'s testimony but that those pieces of evidence did not overcome the lack of credible testimony from K.S. himself. The BIA's decision, however, never addressed any evidence other than K.S.'s testimony.[4] The BIA committed legal error in concluding that, just because an alien's testimony was not credible, it could disregard objective evidence that supports the withholding claim.

It is less settled whether an adverse credibility determination is automatically fatal to a claim for asylum. Unlike a claim for withholding of removal, which involves a purely objective inquiry, a claim for asylum requires the applicant to show a *subjective* fear of persecution, in addition to an objective reasonableness of his fear. *Guo v. Ashcroft*, 386 F.3d 556, 564-65 (3d Cir. 2004). Our precedent has not clarified whether

---

[4] Our dissenting colleague states that the BIA adopted "as its own" the "IJ's factual findings," including the consideration of the wife's testimony and the police affidavit. Dissent at 3. We disagree. As already noted, *supra* n.3, the BIA was explicit in referring to and hence adopting only the IJ's credibility findings. (A.R. at 3 ("We adopt and affirm the Immigration judge's adverse credibility findings for the reasons stated therein … .").) It made no reference at all to evidence beyond K.S.'s testimony.

that subjective component must be shown through credible testimony from the applicant. *Compare Sukwanputra v. Gonzales*, 434 F.3d 627, 637 (3d Cir. 2006) ("To establish a well-founded fear of persecution, an applicant must first demonstrate a subjective fear of persecution through credible testimony that her fear is genuine."), *and Abdulrahman v. Ashcroft*, 330 F.3d 587, 592 (3d Cir. 2003) ("[A]liens have the burden to establish their eligibility for asylum through credible testimony[.]"), *with Chavarria v. Gonzalez*, 446 F.3d 508, 520 (3d Cir. 2006) ("We have held that an alien may use testimonial, documentary, or expert evidence to demonstrate either a subjective or objectively reasonable fear of future persecution."), *and Lie v. Ashcroft*, 396 F.3d 530, 537 (3d Cir. 2005) ("There does not appear to be evidence in the record that would compel us to disturb the BIA's finding that Lie's fear of future persecution is not genuine or reasonable.").

But we need not answer that question here. The IJ did not deny K.S.'s application for failure to establish a genuine fear of future persecution. Instead, she determined that the claim for asylum failed at an earlier analytical step because, even after considering all of the evidence, K.S. "[had] not established that he is a member of this particular social group [of bisexual individuals]." (AR at 59.) *See Lukwago v. Ashcroft*, 329 F.3d 157, 170 (3d Cir. 2003) (explaining that, in order to qualify for asylum on account of membership in a particular social group, "the applicant must establish that s/he is a member of that group"). We have not held that membership in a particular social group is a purely subjective inquiry or that it can only be established through the applicant's credible testimony. Thus, the BIA's failure to consider all of the evidence leads us to

9

suggest that, upon remand, it also take into account objective evidence such as the 2017 police affidavit and J.S.'s testimony, when assessing whether K.S. was a member of his asserted particular social group.

The BIA's decision to prematurely end its analysis of the withholding-of-removal question was not harmless error. Our Court "will view an error as harmless and not necessitating a remand to the BIA when it is highly probable that the error did not affect the outcome of the case." *Li Hua Yuan v. Att'y Gen.*, 642 F.3d 420, 427 (3d Cir. 2011); *see also Ricketts v. Att'y Gen.*, 955 F.3d 348, 352 (3d Cir. 2020) (explaining that when "remand would be futile – meaning the BIA on remand would be unable as a matter of law to grant the relief sought – we may deny a petition for review, without regard to the various issues that might otherwise be in play in the case"). There is nothing in the record that would suggest such "high probability." The BIA's decision gives no clear indication that it viewed all the presented evidence, as was required for a fulsome objective inquiry; to the contrary, it implies that it only considered K.S.'s testimony and his credibility. We also cannot discern that the BIA's citation to, *Matter of Burbano*, 20 I. & N. Dec. 872, 874 (B.I.A. 1994), shows that the BIA considered the additional evidence or incorporated the IJ's assessment of that evidence. *Burbano* recognizes the BIA's power to adopt "a decision of the immigration judge, in whole *or in part*," so a reference to that precedent in the BIA's decision here does not imply complete adoption of the IJ's analysis. *Id.* (emphasis added). Furthermore, although the BIA might still have accepted the IJ's findings even if it had considered the 2017 police affidavit and J.S.'s testimony, it would not have been required to accept them as a matter of law, and

10

we cannot assume that it would have done so. *See* 8 C.F.R. § 1003.1(d)(3) (instructing

the BIA to review factual findings for clear error); 8 U.S.C. § 1252(a)(2)(C)-(D) (limiting

our review in this case to constitutional claims and questions of law).

## III.    CONCLUSION

For the foregoing reasons, we will grant the petition for review and direct the BIA

to address the additional evidence that K.S. introduced in support of his application for

asylum and withholding of removal. When conducting its review, the BIA should ensure

that the administrative record includes Exhibit 6, which was omitted from the

administrative record in K.S.'s initial appeal.[5]

---

[5] In light of our instruction to the BIA, we do not reach K.S.'s argument that the omission of Exhibit 6 violated his due process rights.

11

PORTER, *Circuit Judge*, dissenting.

The criminal-alien bar deprives us of "jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in [8 U.S.C. § 1227(a)(2)(B)(i)]." 8 U.S.C. § 1252(a)(2)(C). Here, K.S. was ordered removed under 8 U.S.C. § 1227(a)(2)(B)(i) for three state-law drug offenses triggering this jurisdictional bar. So we cannot review the Bureau of Immigration Appeals's (BIA) factual findings.

We may review the BIA's decision if it involves "constitutional claims" or "questions of law." *Id.* § 1252(a)(2)(D). But if the "BIA's opinion directly states that the BIA is deferring to the IJ, or invokes specific aspects of the IJ's analysis and factfinding in support of the BIA's conclusions, we review both decisions." *Thayalan v. Att'y Gen.*, 997 F.3d 132, 137 (3d Cir. 2021) (quotation marks omitted) (quoting *Uddin v. Att'y Gen.*, 870 F.3d 282, 289 (3d Cir. 2017)). In this case, the agency "adopt[ed] and affirm[ed]" the IJ's adverse credibility determination citing pages three through eight of the IJ's opinion. A.R. 3. So we must look to both the BIA's and the IJ's opinions.

I agree with the majority that in considering K.S.'s application for asylum and relief from removal, the agency had to "weigh the credible testimony *along with other evidence of record.*" 8 U.S.C. § 1229a(c)(4)(B) (emphasis added). Once it has done so, its conclusions about the evidence are determinations of fact that we may not review. *See S.E.R.L. v. Att'y Gen.*, 894 F.3d 535, 543 (3d Cir. 2018); 8 U.S.C. § 1252(a)(2)(C).

K.S. attempts to manufacture a question of law from a clipped statement in the last paragraph of the BIA's opinion affirming the IJ's decision. His argument hinges on the

BIA's closing observation—extracted from the rest of the BIA's opinion and the IJ's decision adopted by the BIA—that "[w]ithout credible testimony the respondent cannot meet his burden of proving that he merits asylum and withholding of removal." A.R. 4.

The majority agrees with K.S. that this statement, torn from the rest of the agency's and the IJ's opinions, was "legal error" because it allegedly suggests that if "an alien's testimony was not credible, [the BIA] could disregard objective evidence that supports the withholding claim." Maj. Op. at 7–8; *see also* Pet'r Br. 15–16. As I understand the majority's position, we may set aside the BIA's decision if an isolated sentence, shorn of context, could be construed as a misstatement of law.

I disagree with this approach because it unfairly construes the two opinions before us. When we review agency decisions, we must consider the whole decision and not focus on just one sentence. *See Auguste v. Ridge*, 395 F.3d 123, 146–47 (3d Cir. 2005). Here, we look to the BIA's whole decision and the portion of the IJ's decision the BIA adopted as its own. Together, they leave no doubt that the agency considered K.S.'s credibility *and* the other evidence that he adduced.

In her opinion, including the pages specifically adopted by the BIA, the IJ considered both K.S.'s arrest records and his wife's testimony. A.R. 54–55. And in the same pages, the IJ correctly stated that "[t]he Court may base its credibility determination on the demeanor, candor, and/or responsiveness of the respondent, the plausibility and consistency of respondent's written and oral statements, as well as the consistency of the statements with *other evidence in the record*, and any other relevant factors." A.R. 55 (emphasis added).

2

After weighing K.S.'s credibility *and* the independent evidence, the IJ found that the adverse credibility determination outweighed the probative effect of his independent evidence. Her decision makes that perfectly clear: "the Court does not believe that [K.S.] has established, given his credibility issues, that he is even a member of a particular social group. *And here the Court is taking into consideration the wife's testimony and the court criminal document*." A.R. 59 (emphasis added). The BIA adopted these factual findings as its own.

Summing up, the agency said that "[w]ithout credible testimony the respondent cannot meet his burden of proving that he merits asylum and withholding of removal." A.R. 4. Considering the whole BIA opinion together with the IJ's opinion, it is obvious that the basis for the agency's decision included both the adverse credibility finding and the alien's independent evidence. The fairest reading of the agency's entire decision is that K.S.'s independent evidence was inadequate, so he needed to testify credibly to qualify for relief. But K.S.'s testimony was not credible, so he failed to carry his evidentiary burden.

The majority's doubtful construction of the agency's summation is no basis for us to vacate the decision. We can only vacate if the BIA's findings and conclusions are "not in accordance with law." 5 U.S.C. § 706(2)(A). And the Supreme Court has repeatedly instructed us to uphold "a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Garland v. Ming Dai*, 141 S. Ct. 1669, 1679 (2021) (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)). We

3

do not extract a sentence from its full context, construe it uncharitably, and on that basis presume that the agency's decision must be vacated for clarification.

By adopting the IJ's decision, the BIA did exactly what the law requires: It weighed the alien's credibility along with independent evidence. Because there was no error of law and we cannot review the agency's factual findings, we must deny the petition. I respectfully dissent.